UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CV 5603

H.R.H. PRINCE FAISAL BIN KHALID BIN
ABDULAZIZ SAUD,

JUDGE BUCHWALD

                        Plaintiff,

Civ.

-against-

**NOTICE OF REMOVAL**

PIA INVESTMENTS LIMITED, PAKISTAN
INTERNATIONAL AIRLINES CORPORATION,

                        Defendant.



JUN 1 2 2007

U.S.D.C. S.D. N.Y.
CASHIERS

          PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 9 U.S.C. § 205, Defendants PIA Investments Limited ("PIAIL") and Pakistan International Airlines Corporation ("PIAC") hereby give notice of removal of the above-captioned action, Index No. 601848/07, pending in the Supreme Court of the State of New York, County of New York.  In support of removal, Defendants state as follows:

          1.      This Notice of Removal is timely pursuant to 9 U.S.C. § 205 insofar as it is being filed before the trial of this action.

          2.      The Supreme Court of the State of New York, County of New York is located within the Southern District of New York.

3.       Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon defendants, which papers include the summons and Complaint, is attached hereto as Exhibit A.

4.       This court has original jurisdiction of this action under 9 U.S.C. § 203, and this action is therefore removable to this Court on that basis, given that no party is a citizen of the United States and the claims asserted herein are subject to mandatory arbitration.

5.       Plaintiff H.R.H. Prince Faisal Bin Khalid Bin Abdulaziz Saud ("Prince Faisal") is a citizen of Saudi Arabia.

6.       PIAIL is a corporation organized under the laws of the British Virgin Island with its principal place of business in Pakistan.

7.       PIAC is a corporation organized under the laws of Pakistan with its principal place of business in Pakistan.

8.       Prince Faisal and PIAIL are shareholders of PIAC.

9.       In the Complaint, Prince Faisal asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Both of these claims relate to a Shareholders' Agreement dated June 30, 1979 by and between Prince Faisal, PIAIL and PIAC (the "Shareholders' Agreement"), a copy of which is attached hereto as Exhibit B. The Shareholders Agreement contains the following arbitration clause:

> "If any question or difference whatsoever shall arise between the parties touching this Agreement or any clause or thing herein

> contained or the construction thereof, or as to any matter in any way
> connected therewith or arising therefrom, then, and in all such cases,
> the matter in dispute shall be referred to arbitration in London by
> three arbitrators in accordance with the Rules of Conciliation and
> Arbitration of the International Chamber of Commerce, Paris and
> any awards rendered in such arbitration shall be final and binding on
> the parties, who shall give full effect thereto."

(Shareholders' Agreement ¶ 16).  Thus, the arbitration clause governs the contract

claims asserted by Prince Faisal in this lawsuit.

        10.    The other claims asserted in the Complaint are tortious

interference with an existing contract, tortious interference with an economic

relationship, and civil conspiracy.  The factual predicate for each of these claims is

the allegation that Defendants' attempt to redeem Plaintiff's shares of PIAIL under

Articles 176 and 179 of the Articles of Association of PIAIL, a copy of which is

attached hereto as Exhibit C, is somehow interfering with Plaintiff's contractual

relationship with non-party Alpha Cayman Capital Limited.  As Plaintiff alleges:

> "PIAC and the Company were aware of the contractual obligations
> between Prince Faisal and Alpha and have intentionally tried to strip
> Prince Faisal of the benefit of his bargain with Alpha by forcing him
> to redeem his shares for a fraction of their worth.  PIAC and the
> Company have interfered intentionally, and Prince Faisal would
> have sold the shares to Alpha but for the Defendants' interference."

(Compl. ¶ 20, 25).  Furthermore, Plaintiff also alleges that:

> "Rather than exercise its right of first refusal to Prince Faisal's shares
> in the Company, PIAC has attempted to wrest control of his shares
> by conspiring with the Company to instigate a forced redemption of
> Prince Faisal's shares for a fraction of their worth."

(Compl. ¶ 44).

11.     The PIAIL Articles of Association contain the following arbitration clause:

> "Whenever any difference arises between the Company on the one hand and any of the members or their executors, administrators or assigns on the other hand, touching on the true intent and construction or the incidence or consequences of these Articles or of the Act, touching anything done or executed, omitted or suffered in pursuance of the Act or touching any breach or alleged breach or otherwise relating to the premises or to these Articles, or to any Act or Ordinance affecting the Company or to any of the affairs of the Company such difference shall be referred to arbitration in London by three arbitrators in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce, Paris, and any award or awards rendered in such arbitration shall be final and binding on the parties who shall give full effect thereto."

(PIAIL Articles of Associate, Article 141).

12.     This is a dispute among the Company, PIAIL, and two of its shareholders. At issue in Prince Faisal's tortious interference and civil conspiracy claims is the propriety of PIAIL's redemption of Prince Faisal's shares under Articles 176 and 179 of the PIAIL Articles of Association. Accordingly, Prince Faisal's claims are covered by the arbitration clause set forth in the PIAIL Articles of Association.

13.     All Defendants consent to this removal.

14.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Supreme Court of the State of New York, County of New York.

Dated: June 11, 2007

CHADBOURNE & PARKE LLP

By _____

Donald I Strauber (DS-9256)
A Member of the Firm
Attorneys for Defendants PIA Investments
Limited and Pakistan International
Airlines Corporation
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

H.R.H PRINCE FAISAL BIN KHALID BIN
ABDULAZIZ AL SAUD,

          Plaintiff,

      v.

PIA INVESTMENTS LIMITED, PAKISTAN
INTERNATIONAL AIRLINES CORPORATION,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No.       07601848

**SUMMONS**

Date filed:

**FILED**

JUN 04 2007

NEW YORK
COUNTY CLERK'S

TO THE ABOVE-NAMED DEFENDANTS:

      You are hereby summoned and required to serve upon plaintiff an answer to the
Complaint in this action within twenty days after the service of this summons, exclusive of the
day of service, or within thirty days after the service is complete if this summons is not
personally delivered to you within the State of New York.  In case of your failure to appear or
answer, judgment will be taken against you by default, in accordance with the complaint herein.

      Plaintiff designates New York County as the place of venue.  Venue is properly based in
this Court pursuant to N.Y. C.P.L.R. § 503(a).

Dated: New York, New York
       June 4, 2007

                                    GIBSON, DUNN & CRUTCHER LLP


                              By: _____
                                    Mitchell A. Karlan

                                    200 Park Avenue,
                                    47th Floor
                                    New York, New York 10166-0193
                                    Telephone: (212) 351-4000
                                    Facsimile: (212) 351-4035

                                    *Attorneys for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

H.R.H PRINCE FAISAL BIN KHALID BIN                    Index No.
ABDULAZIZ AL SAUD,

          Plaintiff,                            **COMPLAINT**    07601848

      v.
                                                      FILED
PIA INVESTMENTS LIMITED, PAKISTAN
INTERNATIONAL AIRLINES CORPORATION,                   JUN 04 2007

          Defendants.                          NEW YORK
                                                      NY CLERK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiff, His Royal Highness Prince Faisal Bin Khalid Bin Abdulaziz Al Saud ("Prince

Faisal"), by its undersigned counsel, for its complaint against Defendants PIA Investments

Limited (the "Company") and Pakistan International Airlines Corporation ("PIAC"), alleges as

follows:

### THE NATURE OF THE ACTION

    1.      This is an action for tortious interference with an existing contract; tortious

interference with an economic relationship; breach of contract; breach of the implied covenant of

good faith and fair dealing; and civil conspiracy.  Prince Faisal seeks emergency relief against

the Company's imminent redemption of Prince Faisal's shares in the Company.  Through the

secretive machinations of its controlling shareholder, PIAC, the Company has instigated a forced

redemption of Price Faisal's shares in the Company, despite Prince Faisal's notice to the

Company and PIAC that he has entered into a valid agreement with a third-party to sell these

shares and the expiration of the right of first refusal in regards to these shares.  Indeed, rather

than buy Prince Faisal's shares according to the terms of the Shareholder's Agreement via

exercise of its right of first refusal, PIAC is attempting, through its control and dominion of the Company, to force a redemption of Prince Faisal's shares for a grossly reduced price.

## THE PARTIES

2.     Plaintiff Prince Faisal is a citizen of Saudi Arabia.

3.     On information and belief, Defendant Company is a company that was first incorporated under the laws of Shariah and was reorganized under the laws of the British Virgin Islands in 1986 as an international business company. The Company carries on the business of real estate investment. The Company owns and manages, though subsidiaries, several hotels, including the Roosevelt Hotel in Manhattan and the Hotel Scribe in Paris, France.

4.     On information and belief, Defendant PIAC is a Pakistani corporation with limited liability formed under the laws of Pakistan. PIAC is the national airlines of Pakistan and owns 99% of the common stock of the Company. It fully exercises dominion and control over the Company and will be the effective sole beneficiary of the impending redemption proceeding.

## BACKGROUND

5.     The Company was first incorporated under the laws of Sharjah and was continued into the BVI as an International Business Company under the International Business Companies Act (Cap.291) on December 31, 1986. The Company was automatically re-registered under the BVI Business Companies Act, 2004 on January 1, 2007. On June 30, 1979 the Prince Faisal and PIAC entered into a shareholders agreement so as to regulate their affairs in respect of the Company ("the Shareholders Agreement").

6.     The Company originally issued 800,000 shares, with Prince Faisal owning 400,000 shares and PIAC owning 400,000 shares. Prince Faisal presently owns 8,000 shares of 100 Dirhams each par value the Company, representing approximately 1% of the issued share

2

capital of the Company. PIAC is the controlling shareholder of the Company and holds the balance of the issued share capital.

7.      Under section 13 of the Shareholders Agreement, Prince Faisal is authorized to sell, transfer, assign or otherwise dispose of his shares in the Company so long was he first gives PIAC written notice of his intention to do so and affords PIAC the right of first refusal at a price and on terms no less favorable than the price and terms at which Prince Faisal can make a bona fide disposition thereof.

8.      Indeed, Prince Faisal had exercised his right to sell his shares in the Company in November 2005 under section 13 of the Shareholder's Agreement. On November 18, 2005, Prince Faisal gave notice to PIAC that he had entered into a purchase and sale agreement with a third-party purchaser, RooScri Holdings, LLC, with respect to his 392,000 shares of the Company. As required under the Shareholder's Agreement, Prince Faisal offered his shares to the PIAC at the same price ($67,750,000) and on the same terms and conditions set forth in the purchase and sale agreement with RooScri Holdings, LLC. PIAC exercised its right of first refusal and agreed to purchase these shares, 49% of Prince Faisal's holding.

9.      On about March 9, 2007 Prince Faisal gave notice to PIAC that he intended to sell 7200 shares in the Company to Alpha Capital MC Limited ("Alpha") for the amount of $8,600,000. This notice was given in accordance with the rights of pre-emption set out in section 13 of the Shareholders Agreement discussed above.

10.     PIAC had sixty days after receipt of the offer in which to accept Prince Faisal's offer. Failure to take respond constituted irrevocable determination by PIAC not to accept. PIAC never responded to Prince Faisal's offer and the sixty days has expired. In fact, rather than permit the sale to proceed, or acquiring the shares as PIAC was entitled to do, PIAC instructed

3

the Company to redeem the Claimant's shares as an end-run around Prince Faisal's shareholder rights.

11.    Indeed, on April 24, 2007, a month and a half after Prince Faisal gave notice to PIAC of his intent to sell his shares for over $8 and half million dollars, Prince Faisal received a Notice of Compulsory Redemption of Shares in the Company ("the Company Notice").  The Company Notice was purported to have been served pursuant to section 176 of the British Virgin Islands Business Companies Act, 2004 (as amended) ("the Act").

12.    The Company Notice stated that the Company intended to redeem Prince Faisal's shares on May 2, 2007 for the paltry sum of $480,000 (equivalent to roughly $60 per share) – a sum over $8 million dollars less than the amount offered by Alpha to Prince Faisal for his shares. The Company Notice, however, was potentially defective in a number of critical aspects under BVI law.

13.    Without waiving his right to contest this redemption as illegal and invalid under both New York and BVI law, Prince Faisal, out of the abundance of caution and in accordance with BVI law, served a notice of dissent in respect of the attempt to redeem his shares on April 27, 2007. The redemption price stated is far less than what the shares are worth, as evidenced by the gross disparity between the Company's stated offer and the outstanding purchase offer by Alpha. No meaningful negotiation regarding the fair market value of the shares has yet occurred. A request was made for the provision of relevant financial and other documentation so that Prince Faisal could reach an informed opinion as to the offer made by PIAC.  To date, PIAC has only offered to make available some of the information requested if certain concessions are made by Prince Faisal.

4

14.    Any attempt by the Company to redeem Prince Faisal's shares as stated in the Notice could lead to irreparable damage to Prince Faisal.  Unless the Company and PIAC are restrained from redeeming the shares:

    a.    The rights that Prince Faisal has as shareholder (including without limitation his rights under Section 13 of the referenced agreement) will be lost.

    b.    If the shares are forcibly redeemed, Price Faisal could face significant New York secondary liability for City and State transfer tax liability (exceeding $6 million) that should be borne by the Company's subsidiary (the owner of the real estate) and PIAC.  There has been no assurance that either Defendant will make such payment.

    c.    The Company, on its own behalf or at its instructions, may take steps to amend the share register.

    d.    Prince Faisal is entitled to invoke the mechanism contained in section 179(8) of the Act, which would require the Company to enter into negotiations with a view to agreeing the fair value of Prince Faisal's shares subject to redemption.

15.    No known prejudice can be suffered by the Company or PIAC if the injunction is granted.

### FIRST CAUSE OF ACTION
#### Tortious Interference with Contractual Relations
#### Against All Defendants

16.    Plaintiff Prince Faisal repeats and re-alleges prior paragraphs 1-19 of this Complaint as though set forth in full herein.

17.    Plaintiff Prince Faisal and Alpha entered into a valid purchase agreement under which Alpha would pay $8,600,000 for 7200 shares of the Company held by Prince Faisal.

5

18.     PIAC was given notice and had knowledge of the purchase agreement and its terms between Prince Faisal and Alpha.

19.     Rather than lawfully exercise its rights of first refusal under the shareholders' agreement, or permit the sale to proceed, PIAC instead opted to deceitfully exert its dominion and control over the Company and together forced a redemption of Prince Faisal's shares as an end run around his contractual rights with Alpha.

20.     PIAC and the Company were aware of the contractual obligations between Prince Faisal and Alpha and have intentionally tried to strip Prince Faisal of the benefit of his bargain with Alpha by forcing him to redeem his shares for a fraction of their worth. PIAC and the Company have interfered intentionally, and Prince Faisal would have sold the shares to Alpha but for the Defendants' interference.

21.     Plaintiff Prince Faisal has been damaged and will continue to be damaged by Defendants' conduct.

### SECOND CAUSE OF ACTION
### Tortious Interference with an Economic Relationship
### Against All Defendants

22.     Plaintiff Prince Faisal repeats and re-alleges prior paragraphs 1-25 of this Complaint as though set forth in full herein.

23.     Plaintiff Prince Faisal and Alpha entered into an economic relationship with Alpha wherein Alpha would purchase 7200 of Prince Faisal's shares of the Company, subject only to PIAC's exercise of its right of first refusal, for the purchase price of $8,600,000.

24.     PIAC was given notice and had knowledge of the purchase agreement between Prince Faisal and Alpha.

25.     PIAC and the Company were aware of the contractual obligations between Prince Faisal and Alpha and have intentionally tried to strip Prince Faisal of the benefit of his bargain with Alpha by forcing him to redeem his shares for a fraction of their worth. PIAC and the Company have interfered intentionally, and Prince Faisal would have sold the shares to Alpha but for the Defendants' interference.

26.     Plaintiff Prince Faisal has been damaged and will continue to be damaged by Defendants' conduct.

### THIRD CAUSE OF ACTION
### Breach of Contract Against PIAC

27.     Plaintiff Prince Faisal repeats and re-alleges prior paragraphs 1-30 of this Complaint as though set forth in full herein.

28.     PIAC has breached the express terms of the Shareholder's Agreement between the parties by instructing the Company to force a redemption of Prince Faisal's shares in order to avoid its right of first refusal obligations.

29.     Plaintiff Prince Faisal has fulfilled his obligations under the Shareholder's Agreement by fully complying with the right of first refusal provision of the agreement and sending notice of the agreement with Alpha to PIAC.

30.     Plaintiff Prince Faisal has been damaged and will continue to be damaged by Defendant PIAC's conduct.

### FOURTH CAUSE OF ACTION
### Breach of the Implied Duty of Good Faith and Fair Dealing
### Against PIAC

31.     Plaintiff Prince Faisal repeats and re-alleges prior paragraphs 1-34 of this Complaint as though set forth in full herein.

32.    PIAC bears an implied duty of good faith and fair dealing in connection with, and in the performance of, the Shareholder's Agreement.

33.    PIAC has a duty implied as a matter of law to do nothing destructive of Prince Faisal's right to enjoy the fruits of the Shareholder's Agreement and to do everything that the Shareholder's Agreement presupposes will be necessary to accomplish their purposes.

34.    PIAC has wielded its discretionary powers under the Shareholder's Agreement in a manner which threatens to defeat the reasonable expectations of Prince Faisal.

35.    The parties and the clear terms of the Shareholder's Agreement granted Prince Faisal the authority to sell his shares in the Company to a third party after the expiration of PIAC's right of first refusal period had expired.  Because it did not want to pay Prince Faisal the true worth of his shares in the Company as Alpha had contracted to pay ($8,600,000), PIAC has instead sought to block Prince Faisal's right to do so by orchestrating a forced redemption proceeding by the Company.

36.    By virtue of its dominion and control of the Company, PIAC arbitrarily, and in a manner inconsistent with the reasonable expectations of the parties, instigated these redemption proceedings which are clearly contrary to the expressed intent of the parties.  PIAC did so willfully and in a malicious attempt to evade the legal obligations under the Shareholder's Agreement.  Accordingly, PIAC has breached its implied covenant of good faith and fair dealing in fulfilling the purposes of the Shareholder's Agreement.

37.    As a result, Prince Faisal has been unable to proceed with his right under Section 13 of the Shareholder's Agreement to sell his shares to a third-party and has been damaged as a result.

8

## FIFTH CAUSE OF ACTION
### Injunction

38.     Prince Faisal repeats and realleges paragraphs 1 through 41 above, as if set forth here in full.

39.     Rather than buy Prince Faisal's shares according to the terms of the Shareholder's Agreement via exercise of its right of first refusal, PIAC is attempting, through its control and dominion of the Company, to force a redemption of Prince Faisal's shares for a grossly reduced price.

40.     This forced redemption for a fraction of the share's worth will prevent Prince Faisal from obtaining the benefit of his bargain with Alpha, the third party purchaser of the shares.

41.     Plaintiff requests an injunction enjoining Defendants from pursuing the Company's imminent forced redemption of Prince Faisal's shares.

## SIXTH CAUSE OF ACTION
### Civil Conspiracy Against All Defendants

42.     Prince Faisal repeats and realleges paragraphs 1 through 45 above, as if set forth here in full.

43.     As alleged above, Defendants have tortiously interfered with Prince Faisal contractual relations and economic relationship.

44.     Rather than exercise its right of first refusal to Prince Faisal's shares in the Company, PIAC has attempted to wrest control of his shares by conspiring with the Company to instigate a forced redemption of Prince Faisal's shares for a fraction of their worth.

9

45.    The Company has indeed instigated a forced redemption of Prince Faisal's shares in furtherance of it and PIAC's plan to deny Prince Faisal the benefit of his bargain with Alpha, a third party purchaser of his shares.

46.    As a result Prince Faisal has been damaged and will continue to be damaged by Defendants' conduct.

## DEMAND FOR RELIEF

WHEREFORE, plaintiff respectfully demands judgment against Defendants as follows:

(a)    granting a temporary restraining order and preliminary and permanent injunctions prohibiting defendants, their agents, servants, employees, officers, attorneys, and all other persons in active concert or participation with it, from acting on and/or pursuing the forced redemption of Prince Faisal's shares of the Company;

(b)    awarding attorneys' fees, costs, and disbursements in prosecuting this action to the extent permitted by law; and

(c)    awarding such other and further relief as this Court deems just and proper.

Dated:  June 4, 2007

GIBSON, DUNN & CRUTCHER LLP

By:_____
Mitchell A. Karlan

200 Park Avenue,
47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Plaintiff*

10

Index No. _____ /07
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

H.R.H PRINCE FAISAL BIN KHALID BIN
ABDULAZIZ AL SAUD,

                                    Plaintiff,

           v.

PIA INVESTMENTS LIMITED AND PAKISTAN
INTERNATIONAL AIRLINES CORPORATION

                                    Defendants

SUMMONS AND COMPLAINT

GIBSON, DUNN & CRUTCHER LLP

Attorneys for Plaintiff

        200 PARK AVENUE
    NEW YORK, NY 10166-0193
        (212) 351-4000

To _____ , Esq.,

Attorney for

Due and proper service of a copy
of the within is hereby admitted

Exhibit B

nt by :    547336                    AFRIQI ANGELL SHJ    84-784  13/12/94  18:56

1-8(B)                                                               D R A F T  A

## SHAREHOLDERS' AGREEMENT

THIS AGREEMENT is made the 30th day of June One thousand nine hundred and seventy-nine, between PIA INVESTMENTS LIMITED, a company with limited liability duly formed and existing under the laws of Sharjah and having offices at P.O. Box 5925, Sharjah, UAE, (hereinafter referred to as "the COMPANY", which expression shall, where the context so admits, include its successors-in-interest and assigns), of the first part, and PAKISTAN INTERNA-TIONAL AIRLINES CORPORATION, a corporation with limited liability duly formed and existing under the laws of Pakistan and having offices at Karachi Airport, Karachi, Pakistan, (hereinafter referred to as "PIAC", which expression shall, where the context so admits, include its successors-in-interest and assigns), of the second part, and HIS ROYAL HIGHNESS, PRINCE FAISAL BIN KHALID BIN ABDUL AZIZ AL SAUD, of Riyadh, Kingdom of Saudi Arabia, (hereinafter referred to as "HRH PRINCE FAISAL", which expression shall, where

ent by : 54/33b                HFHIDI HNGELL SHJ        H4-JH4  13-12-99    10:5b
                                                                            (Y)

( 2 )

the context so admits, include
his heirs, executors, successors,
representatives and permitted
assigns), of the third part :

W H E R E A S :

(A) The present authorised
capital of the COMPANY
is Dirhams 50,000,000,
out of which shares
of the value of
Dirhams 40,000,000 have
been subscribed and paid
for in full by PIAC ;

(b) By corporate action
duly taken, the COMPANY
has, subject to the
approval of His Highness,
The Ruler of Sharjah,
increased its authorised
capital to Dirhams
120,000,000, and is
desirous of inviting
subscriptions in cash
for the issue of further
capital of the value
of Dirhams 40,000,000 ;

(c) PIAC has submitted an
"Investors Profile"
to HRH PRINCE FAISAL,
containing detailed
particulars of the
COMPANY's activities
and development proposals;

( 3 )

and has invited HRH PRINCE
FAISAL to subscribe and
pay for such additional
capital on the terms
herein contained ;

(d) HRH PRINCE FAISAL has
completed a detailed
examination into the
COMPANY's affairs, and
has agreed to proceed
with the acquisition
of such additional
capital ;

NOW, THEREFORE, THIS AGREEMENT
WITNESSES that it is hereby
agreed and declared by and
between the parties hereto as
follows -

1.   HRH PRINCE FAISAL hereby
agrees and undertakes to
subscribe for and take
400,000 shares in the
capital of the COMPANY,
on or before the 1st day
of July 1979, and in
consideration thereof,
will pay therefor in cash
to the COMPANY Dh 100 per
share, being a total of
Dh 40,000,000 ("the
Subscription Price"),
on or before the said
date.  Upon the COMPANY's
receipt from HRH PRINCE
FAISAL, of the entire

( ٢ )

البسمى سمووالا'يمير فيمسبل
لكى يكتتب ويسبد لسع را'سالمال الا'ضافى
طبقــا للفـروط الوارده فى هــــده
الا'تفاقيــة .

اد )ان سمووالا'يمير فيمسبل
قد انتهى من العد قيسق التفصيلى فى
شئون الشـركــة ورافـق على استكمالك
را'سالمال الا'ضافى .

وبناء على ذلك فان هــــده
الا'تفاقيــة تشـهد على
ان الا'طراف قد اتفقوا فيها بينهم
بمسى ما يلى :-

١ - يبدا يـ وافق سمووالا'يمير
فيصل ويتعهد بالا'كتتاب و هذا
٤٠٠،٠٠٠ سهم فى را'سمال
الشـركـة فى أوقبل اليوم .
من هبسمر سنة ١٩٧٩
وفى مطابل ذلك يبد لصح للشركة
للعدد ١٠٠ درهم من السهم
وبمجموع مقداره ٤٠،٠٠٠،٠٠٠ درهم
(ثمن الا'كتتاب ) ولذلك فى
أوقبل اليوم المذكــور و هــبد
أستـلام الشـركــة تمـيـن
الا'كتتاب بالا'ال من
الا'يمير فيمسبل
لن

( 4 )

Subscription Price, PIAC shall cause the COMPANY to take all requisite corporate steps to issue such shares to HRH PRINCE FAISAL, in order that the total issued, subscribed, and paid-up capital of the COMPANY shall be a sum of Dh 80,000,000, held as to one-half by PIAC and one-half by HRH PRINCE FAISAL.

2. PIAC hereby waives any and all pre-emptive rights it may have under Article 5 of the COMPANY's Articles of Association with respect to the issuance of the said additional Shares to HRH PRINCE FAISAL in accordance with this Agreement.

3. HRH PRINCE FAISAL further agrees and undertakes, as soon as practicable after the date hereof, to provide security in partial replacement of all guarantees heretofore issued by PIAC, (which are listed in Appendix A hereto), to secure the debts or other obligations of the COMPANY, such security to be (i) in an amount equal to one-half of the total guarantees outstanding as aforesaid,

nt by : 547336                    AFRIDI ANGELL SHJ        H4-7H4  13/12/94    16:56

( 5 )                                                           ( 0 )

and (ii) in each instance
in form and from sources
acceptable to the benefi-
ciaries of the guarantees
HRH PRINCE FAISAL shall
participate on the same
basis and to the same
extent as PIAC in any
future guarantees the
COMPANY's creditors may
require.

4. PIAC has provided the
COMPANY with a loan of
US $ 3.2 million ; HRH
PRINCE FAISAL agrees to
grant a loan for the
same amount to the
COMPANY simultaneously
with payment of the
Subscription Price
hereunder. Both such
loans shall be rateably
repaid by the COMPANY
to PIAC and HRH
PRINCE FAISAL, and
shall in all respects
be governed by the same
terms and conditions.

( 6 )

5. It is recognised that
the COMPANY's activities
relate to investment in
individual hotel and
similar projects, and
that, for the development
of such projects,
guarantees from the
shareholders of the
COMPANY are from time
to time required in
addition to the COMPANY's
equity contribution.
It is hereby agreed
that the interest of
each shareholder in any
individual project shall
be the aggregate of
his/its equity contribu-
tion, whether direct or
through the COMPANY, and
the amount of any such
guarantee granted by
him/it, and provision
to that effect shall be
made in an agreement
governing each invest-
ment made by the
COMPANY, whether prior
to or after the date
of this Agreement.

( ٦ )

٥ ـ من المعترف به أن بنشاطات
الشركة تتصل بالاستثمار
في الفنادق الفردية و بمشنة
والمشاريع المشابهة و انه من
أجل تنمية هذه المشاريع
فإن حالات من الساهمين فى
الشركة تكون مطلوبة مـن
وقت لآخر بالاضافة الى مساهمة الشركة بمساهمة رأس مال الشركة
المدفوع و بهذا قد تم الاتفاق
بأن مصلحة كل ساهم فى أى شروع
يكون المجموع الكلى لمساهمته فى رأس المال المدفوعة
سواء كان ذلك مباشرة أو بـين
طريق الشركة وكذلك و يمعين
الكمية التى يحدد بها و سيتضمنها
على ذلك فى الاتفاقية المنصـى
تحكمهم كل استثمار تقـوم
به الشركة سواء
كان ذلك قبل
تاريخ هذا الاتفاق أو بعده .

( 7 )

{ Y }.

6. The parties hereto undertake to abide by the provisions of the Decree establishing the Company, and of the Memorandum and Articles of Association of the COMPANY, as the same may from time to time be amended, and by all corporate actions taken by the COMPANY prior to or following the date the COMPANY receives the

(g)    entire Subscription Price.

7. Promptly after the COMPANY receives payment of the total Subscription Price of Dh 40,000,000, and the loan referred to in clause 4 above from HRH PRINCE FAISAL, the parties hereto will take all such action and do all such things as

(h)    may be necessary to increase the number of Directors of the COMPANY from four to eight.

8. PIAC will not propose any nominee for election to any of the four new directorships and will permit HRH PRINCE FAISAL to nominate such four

( B )

additional Directors from
among persons previously
approved by PIAC. The
terms of office of such
additional Directors shall
expire simultaneously with
the expiration of the terms
of office of the existing
Directors.

9. For so long as PIAC holds
directly or beneficially
not less than 400,000
Shares, the parties hereto
will assure that one-half
the total number of Directors
will at all times be nominees
of PIAC from among persons
previously approved by
HRH PRINCE FAISAL, and that
the Chairman of the Board
will be a Director nominated
by PIAC, and HRH PRINCE FAISAL
will vote his Shares to effect
the foregoing.

10. In order to maintain continuity
in operations and in the
management of the COMPANY, and
to implement its development
plans, HRH PRINCE FAISAL requires
and the parties hereto have
accordingly agreed not to take
or initiate any action to
change the existing management
team of the COMPANY, and

( 9 )

accordingly no change shall
be made in the present
Chairman, Managing Director
and other office bearers of the
COMPANY without the unanimous
consent of the reconstituted
Board of Directors of the
COMPANY in terms of clause 8
above.

10. The parties hereto will take
all requisite corporate steps
to cause an Executive Committee
of the Board of Directors of
the COMPANY to be created,
and to cause the functions
and responsibilities of the
management of the COMPANY to
be divided as follows :

(a)    the Board of Directors,
to be presided over by
the Chairman (with such
Chairman having the
right to cast an addi-
tional casting vote
in the case of a tie
vote), shall be respon-
sible for overall
policy, determination
of investment portfolios
and identification of
geographical areas of
operation of the
Company and all corporate
functions, including
appropriation of profits
and similar matters :

( 10 )

( 11 )

(b) an Executive Committee, to
be composed of four
Directors, of whom two,
including the Managing
Director, will be
selected from among the
Directors nominated by
PIAC, and two Directors
will be selected from
among the Directors
nominated by HRH PRINCE
FAISAL, and such
Executive Committee
shall have the respon-
sibilities of implement-
ing the policies of the
Board of Directors and
directing the activi-
ties of the Managing
Director ;

(c) The Managing Director
shall be responsible for
all day-to-day functions
in connection with the
operations of the
Company, under the
control and direction
of the Executive Committee.

تكــون لجنــة تنفيــذيــة مـــن اربعـــة
بــيـد رأ  يتـنـم ا ختيـــجار اثنيـــن طيــهـــم
يمــا البـيـنم الـديــر التنفيــــــــذى
من بيـــن المـــيـــذ رأ السبـديـــن ميلتحــمم
بيـــك ويتـــم ا ختيمــصـار اثنيـــن مـــــون
بيـــن العـــذ رأ السـبـديـــن ميلـ
سمـــرالا مـــــز فيمـــــل وستلتـــصولـــــى
هـــصـد الـلجنــة التنفيـــــذيـ مـــصـة
مشيـوليـــصـات تنليمـذ سيمـا سـصـــصات
مجلـــــس الا دارة وتـــــوجــيـــــــ
للـمـصـصيـــاطـنـــــــــات
المـــصـدريـــصـلـصــصـعلـــصــــمـ
التنليـصـــصـبـــــلـذى

( ج ) ميكسـون العـدديــر التنليـصـصـذى
مسلــصـولا عـن الا صـصـصـصـــان
اليـمـوبـيـصـمة المتعلـصـمة بعلـيـصـات
الـصـركـــصة وذل صـــك
تحمت اشـصـراف وتـصـجـبـصــ
اللجنـصـة التنليـصـك يـصـصـصـية

( 11 )

(١١)

12. The parties hereto under-
take to exercise their
respective voting rights
to procure the appoint-
ment of Minhal Incorporated
as managers/operators of
all hotel projects in
which the COMPANY acquires
an equity interest. The
remuneration payable to
Minhal Incorporated for
its services as aforesaid
shall be mutually agreed
in each instance, and
shall be in accordance
with that commonly
charged by international
hotel chains.

١٢ ستتعهـد الإطـراف بأن يمـارس
كل منهـم حقـوقـه فـى التـصـويـت
من اجـل تعييـن شـركـة منهـال
المحـدودة لإدارة لجميـع
ما يتـم انشـائه التى يكـون
للشـركة حصة فـى أعمـالها الفندقيـة
وسيتم الاتفـاق على كل مسالـة على
الا حسـاب المستحـقة لشـركـة
منهـال المحـدودة فـى مقـابل
الخـدمـات المـذكـورة
وسيكـون ذلـك طبقـا
للأجـر النـى تحاسـب
بهـا عـادة مجمـوعـات
الفنـادق العالميـة

13. Neither PIAC nor HRH PRINCE
FAISAL shall sell, transfer,
assign or otherwise dispose
of their respective Shares
in the COMPANY without
first offering the other
in writing of its/his
intention to do so and
affording such other the
opportunity to acquire
the same, for itself/
himself or its/his
nominees, at a price
and on terms no less
favourable than the price
and terms at which the

١٣ ـ لـن يقـوم بيـاك وسـمـو
الا يبيـع فيصـل ببيـع أو تحـويـل
او التنـازل او التصـرف بتلك الحصـص
فـى اسهمـه دون ان يخطـر اولا
الطـرف الا خـر بتابة بنيتـه القيـام
بذلـك وان يمنـح ذلـك الطـرف
الفـرصـة لتملكهـا لنفـس
او لطـالبيـه وبثمـن لا
مـن الثمـن والشـروط التـى
يستطيـع الطـرف

( 12 )

party serving notice can,
in a bona fide sale, make
disposition thereof.

14. This Agreement shall
extend to and be binding
upon each of the parties
hereto, its successors and
assigns.

15. No modification of this
Agreement shall be valid
unless made in writing
and signed by the
parties hereto.

16. If any question or diffe-
rence whatsoever shall
arise between the parties
touching this Agreement
or any clause or thing
herein contained or the
construction thereof,
or as to any matter in
any way connected
therewith or arising
therefrom, then, and in
all such cases, the
matter in dispute shall
be referred to arbitration
in London by three arbitra-
tors in accordance with the
Rules of Conciliation and
Arbitration of the Inter-
national Chamber of Commerce,
Paris, and any award or

by : 547336                    AFRIDI ANGELL SHJ    04-784 19/12/94  18.56    Pg. 14/14

( 13 )                                                          ( 12 )

awards rendered in such arbi-
tration shall be final and
binding on the parties, who
shall give full effect thereto..

IN WITNESS WHEREOF the parties
hereto have duly executed
this Agreement on the day and
year first above-written.

SIGNED and DELIVERED
by the abovenamed
HIS ROYAL HIGHNESS,
PRINCE FAISAL BIN
KHALID BIN ABDUL AZIZ
AL SAUD, in the
presence of :

( )

SIGNED and DELIVERED
for and on behalf of
the abovenamed
PAKISTAN INTERNATIONAL
AIRLINES CORPORATION

by Mr. Nasir Ansari

duly authorised in
that behalf, in the
presence of :

( )

SIGNED and DELIVERED
for and on behalf of
the abovenamed,
PIA INVESTMENTS LIMITED

by Mr. Abu Maqsud M.
Nur Khan
duly authorised in
that behalf, in the
presence of :

WITNESS :-

M. A. M. AFRIDI
OXY. DIGNAM & Co.,
DUBAI

RECYCLED

Exhibit C

TERRITORY OF THE BRITISH VIRGIN ISLANDS

THE INTERNATIONAL BUSINESS COMPANIES ACT
(No. 8 OF 1984)

ARTICLES OF ASSOCIATION

OF

PIA INVESTMENTS LIMITED

PRELIMINARY

1. In these Articles, if not inconsistent with the subject
or context, the words and expressions standing in the
first column of the following table shall bear the
meanings set opposite them respectively in the second
column thereof.

| Words | Meaning |
|-------|---------|
| capital | The sum of the aggregate par value of all outstanding shares with par value of the Company and shares with par value held by the Company as treasury shares plus |
| | (a) the aggregate of the amounts designated as capital of all outstanding shares without par value of the Company and shares without par value held by the Company as treasury shares, and |
| | (b) the amounts as are from time to time transferred from surplus to capital by a resolution of directors. |
| member | A person who holds shares in the Company. |
| person | An individual, a corporation, a trust, the estate of a deceased individual, a partnership or an unincorporated association of persons. |

resolution of
directors

(a) A resolution approved at a
duly convened and
constituted meeting of
directors of the Company or
of a committee of directors
of the Company by the
affirmative vote of a
simple majority of the
directors present at the
meeting who voted and did
not abstain; or

(b) a resolution consented to
in writing by all directors
or of all members of the
committee, as the case may
be;

except that where a director is
given more than one vote, he
shall be counted by the number
of votes he casts for the
purpose of establishing a
majority.

resolution of
members

(a) A resolution approved at a
duly convened and
constituted meeting of the
members of the Company by
the affirmative vote of

(i) a simple majority of
the votes of the
shares entitled to
vote thereon which
were present at the
meeting and were voted
and not abstained, or

(ii) a simple majority of
the votes of each
class or series of
shares which were
present at the meeting
and entitled to vote
thereon as a class or
series and were voted
and not abstained and
of a simple majority

2

of the votes of the remaining shares entitled to vote thereon which were present at the meeting and were voted and not abstained; or

(b) a resolution consented to in writing by

    (i) an absolute majority of the votes of shares entitled to vote thereon, or

    (ii) an absolute majority of the votes of each class or series of shares entitled to vote thereon as a class or series and of an absolute majority of the votes of the remaining shares entitled to vote thereon;

securities — Shares and debt obligations of every kind, and options, warrants and rights to acquire shares, or debt obligations.

Shareholders' Agreement — An agreement dated June, 1979 between the Company, Pakistan International Airlines Corporation, a corporation with limited liability formed and existing under the laws of Pakistan having officers at Karachi Airport, Karachi, Pakistan and his Royal Highness, Prince Faisal Bin Khalid Bin Abdul Aziz Al Saud of Riyadh, Kingdom of Saudi Arabia.

surplus — The excess, if any, at the time of the determination of the total assets of the Company over

3

the aggregate of its total liabilities, as shown in its books of accounts, plus the Company's capital.

the Act

The International Business Companies Act (no. 8 of 1984) including any modification, extension, re-enactment or renewal thereof and any regulations made thereunder.

the Memorandum

The Memorandum of Association of the Company as originally framed or as from time to time amended.

the Seal

Any Seal which has been duly adopted as the Seal of the Company.

these Articles

These Articles of Association as originally framed or as from time to time amended.

treasury shares

Shares in the Company that were previously issued but were repurchased, redeemed or otherwise acquired by the Company and not cancelled.

2. "Written" or any term of like import includes words typewritten, printed, painted, engraved, lithographed, photographed or represented or reproduced by any mode of reproducing words in a visible form, including telex, facsimile, telegram, cable or other form of writing produced by electronic communication.

3. Save as aforesaid any words or expressions defined in the Act shall bear the same meaning in these Articles.

4. Whenever the singular or plural number, or the masculine, feminine or neuter gender is used in these Articles, it shall equally, where the context admits, include the others.

5. A reference in these Articles to voting in relation to shares shall be construed as a reference to voting by members holding the shares except that it is the votes allocated to the shares that shall be counted and not

4

the number of members who actually voted and a reference to shares being present at a meeting shall be given a corresponding construction.

6.   A reference to money in these Articles is, unless otherwise stated, a reference to the currency in which shares in the Company shall be issued according to the provisions of the Memorandum.

## REGISTERED SHARES

7.   Every member holding registered shares in the Company shall be entitled to a certificate signed by a director or officer of the Company and under the Seal specifying the share or shares held by him and the signature of the director or officer and the Seal may be facsimiles.

8.   Any member receiving a share certificate for registered shares shall indemnify and hold the Company and its directors and officers harmless from any loss or liability which they may incur by reason of any wrongful or fraudulent use or representation made by any person by virtue of the possession thereof.  If a share certificate for registered shares is worn out or lost it may be renewed on production of the worn out certificate or on satisfactory proof of its loss together with such indemnity as may be required a resolution of directors.

9.   If several persons are registered as joint holders of any shares, any one of such persons may give an effectual receipt for any dividend payable in respect of such shares.

## SHARES, AUTHORIZED CAPITAL, CAPITAL AND SURPLUS

10.  Subject to the provisions of these Articles and any resolution of members, the unissued shares of the Company shall be at the disposal of the directors who may, without limiting or affecting any rights previously conferred on the holders of any existing shares or class or series of shares, offer, allot, grant options over or otherwise dispose of shares to such persons, at such times and upon such terms and conditions as the Company may by resolution of directors determine.



5

11. No share in the Company may be issued until the consideration in respect thereof is fully paid, and when issued the share is for all purposes fully paid and non-assessable save that a share issued for a promissory note or other written obligation for payment of a debt may be issued subject to forfeiture in the manner prescribed in these Articles.

12. Shares in the Company shall be issued for money, services rendered, personal property, an estate in real property, a promissory note or other binding obligation to contribute money or property or any combination of the foregoing as shall be determined by a resolution of directors.

13. Shares in the Company may be issued for such amount of consideration as the directors may from time to time by resolution of directors determine, except that in the case of shares with par value, the amount shall not be less than the par value, and in the absence of fraud the decision of the directors as to the value of the consideration received by the Company in respect of the issue is conclusive unless a question of law is involved. The consideration in respect of the shares constitutes capital to the extent of the par value and the excess constitutes surplus.

14. A share issued by the Company upon conversion of, or in exchange for, another share or a debt obligation or other security in the Company, shall be treated for all purposes as having been issued for money equal to the consideration received or deemed to have been received by the Company in respect of the other share, debt obligation or security.

15. Treasury shares may be disposed of by the Company on such terms and conditions (not otherwise inconsistent with these articles) as the Company may by resolution of directors determine.

16. The Company may issue fractions of a share and a fractional share shall have the same corresponding fractional liabilities, limitations, preferences, privileges, qualifications, restrictions, rights and other attributes of a whole share of the same class or series of shares.

6

