UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

H.R.H. PRINCE FAISAL BIN KHALID BIN
ABDULAZIZ AL SAUD,

                              Plaintiff,

          -against-

PIA INVESTMENTS LIMITED, PAKISTAN
INTERNATIONAL AIRLINES CORPORATION,

                              Defendants.

07 Civ. 5603 (NRB)(HBP)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL ARBITRATION OR DISMISS THE COMPLAINT**


CHADBOURNE & PARKE LLP
Attorneys for Defendants
30 Rockefeller Plaza
New York, NY  10112
(212) 408-5100


Donald I Strauber (DS-9256)
Phoebe A. Wilkinson (PW-3143)
Matthew I. Kliegman (MK-4962)
          Of Counsel

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..............................................................................................ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ................................................................................................3

ARGUMENT ...................................................................................................................6

I.      THE COURT SHOULD COMPEL THE PARTIES TO ARBITRATE
        PLAINTIFF'S CLAIMS.....................................................................................6

II.     EVEN IF THIS COURT CONCLUDES THAT IT SHOULD NOT COMPEL
       ARBITRATION, THE COMPLAINT SHOULD BE DISMISSED ON THE
       GROUND OF *FORUM NON CONVENIENS* BECAUSE PLAINTIFF'S CLAIMS
       HAVE ABSOLUTELY NO CONNECTION WITH THE STATE OF NEW
       YORK ............................................................................................................13

          A.     Plaintiff's Choice of Forum is Not Entitled to Deference..................................14

          B.     There is an Adequate Alternative Forum for This Litigation ............................16

          C.     A Balancing of the Private And Public Interest Factors Weighs in Favor of
                 Dismissal....................................................................................................17

                1.     Private Interest Factors.........................................................................17

                2.     Public Interest Factors..........................................................................18

       CONCLUSION....................................................................................................22

i

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>:                                                                                     <u>Page</u>

<u>ACE Capital Re Overseas Ltd</u>. v. <u>Cent. United Life Ins. Co</u>.,
    307 F.3d 24 (2d Cir. 2002) ....................................................................9

<u>Acosta</u> v. <u>JPMorgan Chase & Co</u>.,
    No. 06-0995-cv, 2007 U.S. App. LEXIS 5635 (2d Cir. March 6, 2007) .......... 13, 15, 17-18

<u>Acosta</u> v. <u>JPMorgan Chase & Co</u>.,
    05 Civ. 977, 2006 U.S. Dist. LEXIS 3491 (S.D.N.Y. Jan. 30, 2006),
    <u>aff'd</u>, 2007 U.S. App. LEXIS 5635 (2d Cir. March 6, 2007) ........................................13, 14

<u>Brockman</u> v. <u>Sun Valley Resorts</u>,
    923 F. Supp. 1176 (D. Minn. 1996) ....................................................................21

<u>Capital Currency Exch</u>. v. <u>Nat'l Westminster Bank PLC</u>,
    155 F.3d 603 (2d Cir. 1998) ....................................................................18

<u>Clisham Mgmt., Inc</u>. v. <u>Am. Steel Bldg. Co</u>.,
    792 F. Supp. 150 (D. Conn. 1992) ....................................................................21

<u>Damigos</u> v. <u>Flanders Compania Naviera, S.A</u>.,
    716 F. Supp. 104 (S.D.N.Y. 1989) ....................................................................21

<u>Diatronics, Inc</u>. v. <u>Elbit Computers, Ltd</u>.,
    649 F. Supp. 122 (S.D.N.Y. 1986) ............................................................. 20-21

<u>Doe</u> v. <u>Hyland Therapeutics Div</u>.,
    807 F. Supp. 1117 (S.D.N.Y. 1992) ....................................................................21

<u>Do Rosario Veiga</u> v. <u>World Meteorological Org</u>.,
    No. 07 Civ. 3182, 2007 U.S. Dist. LEXIS 33879
    (S.D.N.Y. May 7, 2007) ....................................................................15

<u>Dowling</u> v. <u>Hyland Therapeutics Div., Travenol Lab., Inc</u>.,
    767 F. Supp. 57 (S.D.N.Y. 1991) ....................................................................16

<u>Gordon</u> v. <u>N.Y. Times Employees Fed. Credit Union</u>,
    No. 01 Civ. 0811, 2001 U.S. Dist. LEXIS 15531
    (S.D.N.Y. Sept. 26, 2001) ....................................................................9

<u>Gulf Oil Corp</u>. v. <u>Gilbert</u>,
    330 U.S. 501 (1947) ....................................................................21

Henderson v. Metro. Bank & Trust Co.,
    470 F. Supp. 2d 294 (S.D.N.Y. 2006) ...................................................................... 15-16

In re Rezulin Prods. Liab. Litig.,
    214 F. Supp. 2d 396 (S.D.N.Y. 2002) .........................................................................19

In re Union Carbide Corp. Gas Plant Disaster at Bhopal,
    634 F. Supp. 842 (S.D.N.Y. 1986), aff'd as
    modified, 809 F.2d 195 (2d Cir. 1987) ....................................................................21-22

Islamic Republic of Iran v. Pahlavi,
    62 N.Y.2d 474, 467 N.E.2d 245, 478 N.Y.S.2d 597 (1984) .............................................22

JLM Indus. v. Stolt-Nielsen SA,
    387 F.3d 163 (2d Cir. 2004) ...............................................................................9, 10

Kilvert v. Tambrands Inc.,
    906 F. Supp. 790 (S.D.N.Y. 1995) ...........................................................................19

Kirch v. Liberty Media Corp.,
    No. 04 Civ. 667, 2006 U.S. Dist. LEXIS 82175
    (S.D.N.Y. Nov. 8, 2006) ...................................................................................15, 20

Lurzer GMBH v. American Showcase,
    77 F. Supp. 2d 370 (S.D.N.Y. 1997), aff'd 201 F.3d 431 (2d Cir. 1999) .........................10

Mann v. N.A.S.A. Int'l, Inc.,
    No. 99 Civ. 11936, 2000 U.S. Dist. LEXIS 11922
    (S.D.N.Y. Aug. 18, 2000) ......................................................................................8

McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.,
    858 F.2d 825 (2d Cir. 1988) ...................................................................................8

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,
    473 U.S. 614 (1985) ............................................................................................8

Monegasque De Reassurances S.A.M. (monde Re) v. Nak Naftogaz of Ukr.,
    311 F.3d 488 (2d Cir. 2002) ..................................................................................15

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1 (1983) ...............................................................................................6

Murray v. BBC,
    81 F.3d 287 (2d Cir. 1996) ...................................................................................18

Nat'l Union Fire Ins. Co. v. Champps Entm't, Inc.,
    No. 04 Civ. 6163, 2004 U.S. Dist. LEXIS 25052
    (S.D.N.Y. Dec. 13, 2004) ...............................................................................9-10, 12

Norcom Elecs. Corp. v. CIM USA Inc.,
    104 F. Supp. 2d 198 (S.D.N.Y. 2000) ................................................12

Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,
    85 F. Supp. 2d 282 (S.D.N.Y. 2000) ....................................................13, 16, 19

Otor, S.A. v. Credit Lyonnais, S.A.,
    No. 04 Civ. 6978, 2006 U.S. Dist. LEXIS 64885
    (S.D.N.Y. Sept. 11, 2006) ................................................................20

Overseas Media, Inc. v. Skvortsov,
    441 F. Supp. 2d 610 (S.D.N.Y. 2006) ..................................................14, 17, 20

Piper Aircraft Co. v. Reyno,
    454 U.S. 235 (1981) ...................................................................... 14, 17, 18-19

Pollux Holding, Ltd. v. Chase Manhattan Bank,
    329 F.3d 64 (2d Cir. 2003)................................................................14, 15, 19, 20

PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.,
    No. 96 Civ. 3669, 1997 WL 31194 (S.D.N.Y. Jan. 28, 1997) ...........................................19

Radio Computing Servs. v. Cool Partners, Inc.,
    No. 01 Civ. 5892, 2001 U.S. Dist. LEXIS 9673
    (S.D.N.Y. July 12, 2001) ................................................................12

Sea Bowld Marine Group, LDC v. Ocean Fast Pty, Ltd.,
    432 F.Supp.2d 1305, 1312 (S.D. Fla. 2006) ...............................................8

Shaw Group, Inc. v. Triplefine Int'l Corp.,
    322 F.3d 115(2d Cir. 2003) ..............................................................8

Spagnola v. The Chubb Corp.,
    No. 06 Civ. 9960, 2007 WL 927198 (S.D.N.Y. March 27, 2007) ........................................7

Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.,
    421 F. Supp.2d 741 (S.D.N.Y. 2006) ....................................................18

Trigano v. Bain & Co.,
    No. 98-7475, 1999 U.S. App. LEXIS 14626 (2d Cir. June 29, 1999) ................... 18, 19-20

Turedi v. Coca Cola Co.,
    460 F. Supp. 2d 507 (S.D.N.Y. 2006).....................................................15, 16

Victoriatea.com, Inc. v. Cott Bev. Can,
    239 F. Supp. 2d 377 (S.D.N.Y. 2003).....................................................14

WorldCrisa Corp. v. Armstrong,
     129 F.3d 71 (2d Cir. 1997) ....................................................................................9

Yung v. Lee,
     160 Fed. Appx. 37 (2d Cir. 2005) ..............................................................16, 17

## **STATUTES:**

9 U.S.C. § 1 (2007).. ...................................................................................................8

9 U.S.C. § 206 (2007) ..................................................................................................1

BVI Business Companies Act § 176 ...........................................................4, 11-12, 20

BVI Business Companies Act § 179 ................................................................11-12, 20

Fed. R. Civ. P. 12 ..........................................................................................................1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

H.R.H. PRINCE FAISAL BIN KHALID BIN
ABDULAZIZ AL SAUD,

                                        Plaintiff,                    07 Civ. 5603 (NRB) (HBP)

                -against-

PIA INVESTMENTS LIMITED, PAKISTAN
INTERNATIONAL AIRLINES CORPORATION,

                                        Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO COMPEL ARBITRATION OR DISMISS THE COMPLAINT

Defendants PIA Investments Limited ("Investments") and Pakistan International

Airlines Corporation (the "Airline"), (collectively, "Defendants"), respectfully submit this

Memorandum of Law in support of their motion to compel arbitration pursuant to 9 U.S.C. § 206

and Rule 12(b)(1) of the Federal Rules of Civil Procedure, or, in the alternative, their motion to

dismiss the Complaint on the ground of *forum non conveniens*.

## PRELIMINARY STATEMENT

This case does not belong in this Court.  It is brought by H.R.H. Prince Faisal Bin

Khalid Bin Abdulaziz Al Saud ("Plaintiff" or "Prince Faisal"), a Saudi Arabian citizen, against

Investments, a corporation organized under the laws of the British Virgin Islands ("BVI") with

its principal place of business in Pakistan, and the Airline, a corporation organized under the

laws of Pakistan with its principal place of business in Pakistan.  Plaintiff asserts two causes of

action against the Airline for breach of the Shareholders' Agreement dated June 30, 1979 by and between Plaintiff, Investments and the Airline (the "Shareholders' Agreement[1]") -- yet this agreement has an explicit arbitration clause covering all actions for breach.  In addition, Plaintiff alleges that Defendants tortiously interfered with Plaintiff's relationship with a non-party, a Cayman Islands corporation, by seeking to redeem Plaintiff's shares in Investments, an act specifically provided for by both the Investments Articles of Association ("Investments AofA")[2] and the BVI Business Companies Act, as amended 2004 (the "BVI Act").  Like the Shareholders' Agreement, the Investments AofA similarly provides that any dispute alleging an injury from actions taken pursuant to the Investments AofA or the BVI Act is to be arbitrated.  Plaintiff has ignored the arbitration clauses in both the Shareholders' Agreement and the Investments AofA in filing this lawsuit.

Furthermore, even if Plaintiff's claims were not covered by binding arbitration clauses, this would not be the right forum for Plaintiff's Complaint.  There is nothing about the Plaintiff, Defendants, the Shareholders' Agreement, or the corporate governance issues raised by Plaintiff's allegations that bear any connection whatsoever with the State of New York, or the United States at all.

In light of the foregoing, this Court should:

- Compel the parties to arbitrate Plaintiff's claims in London, England pursuant to the applicable arbitration clauses.

---

[1]    A copy of the Shareholders' Agreement is attached as Exhibit A to the Declaration of Donald I Strauber in Support of Defendants' Motion to Dismiss dated June 27, 2007 (the "Strauber Decl.").

[2]    A copy of the Investments AofA is attached as Exhibit B to the Strauber Decl.

- In the alternative, if the Court declines to compel arbitration, the Court should dismiss the Complaint on the ground of *forum non conveniens* as this forum bears no relationship to Plaintiff's claims and it would be inconvenient to litigate them here.

For the forgoing reasons, and those discussed below, Defendants' motion to compel arbitration or, in the alternative, dismiss the Complaint on the ground of *forum non coveniens* should be granted.

## STATEMENT OF FACTS [3]

Plaintiff is a citizen of Saudi Arabia. (Compl. ¶ 2). Investments is a corporation organized under the laws of the British Virgin Islands with its principal place of business in Pakistan. (Declaration of Ali Safdar Rezvi in Support of Motion to Compel or Dismiss, dated June 28, 2007 (the "Rezvi Decl."), ¶ 2). The Airline is a corporation organized under the laws of Pakistan with its principal place of business in Pakistan. (Declaration of Rashid S. Farookee in Support of Motion to Compel Arbitration or Dismiss, dated June 27, 2007 (the "Farookee Decl."), ¶ 2).

Plaintiff originally owned 50% of the stock of Investments and the Airline owned the remaining 50%. (Compl. ¶ 6). In November 2005, Plaintiff found a prospective purchaser of 99% of his Investments stock who agreed to buy it for approximately $68 million. (Compl. ¶ 8). Pursuant to a right of first refusal set forth in the Shareholders' Agreement, Plaintiff was required to offer to sell his stock to the Airline on the same terms before consummating his transaction with the prospective purchaser. (Compl. ¶ 8; Shareholders' Agreement ¶ 13). The Airline

---

[3]  The allegations of the Complaint are presumed true for purposes of this motion only. A copy of the Complaint is attached as Exhibit C to the Strauber Decl.

exercised its option to purchase Plaintiff's shares. (Compl. ¶ 8). After that transaction, Prince

Faisal retained 8000 shares of Investments stock. (Compl. ¶¶ 6, 8).

On March 9, 2007, Plaintiff gave notice to the Airline that he intended to sell 7200 of

his remaining 8000 shares in Investments at a price of $8.6 million to Alpha Capital MC

Limited. (Compl. ¶ 9). Pursuant to the right of first refusal set forth in the Shareholders'

Agreement, Plaintiff gave the Airline the option to purchase the 7200 shares at that price.

(Compl. ¶ 9).

On April 24, 2007, Investments sent a letter to Plaintiff providing notice pursuant to

Section 176 of the BVI Act that Investments intended to redeem all of the Plaintiff's remaining

8000 shares on May 2, 2007 for $480,000, i.e., $60 per share. (Compl. ¶¶ 11-12). Investments

had an unqualified right to seek the redemption of Plaintiff's shares pursuant to Article 19 of the

Investments AofA, which provides as follows:

> "Subject to provisions to the contrary in (a) the Memorandum of these Articles;
> (b) the designations, powers, preferences, rights, qualifications, limitation and
> restriction with which the shares were issued; or (c) the subscription agreement
> for the issue of the shares, [Investments] may purchase, redeem or otherwise
> acquire its own shares without the consent of members whose shares will be
> purchased, redeemed or otherwise acquired."

(Investments AofA, Art. 19).

Plaintiff's counsel responded to the Airline's letter regarding the redemption of his

shares in a letter dated April 27, 2007. (Compl. ¶ 13). In the letter, Plaintiff's counsel dissented

from the notice of redemption and asserted that the redemption notice was defective under the

BVI Act. (Compl. ¶ 13).

Plaintiff filed this lawsuit on June 4, 2007, asserting claims for tortious interference with an existing contract, tortious interference with an economic relationship, breach of contract, breach of the implied covenant of good faith and fair dealing, and civil conspiracy.[4]  Plaintiff contends that the Airline breached the terms of the Shareholders' Agreement "by instructing [Investments] to force a redemption of Plaintiff's shares in order to avoid its right of first refusal obligations."  (Compl. ¶ 28).  Plaintiff further contends that the same actions by the Airline violated the implied covenant of good faith and fair dealing in the Shareholders' Agreement and that "[the Airline] has wielded its discretionary powers under the Shareholders' Agreement in a manner which threatens to defeat the reasonable expectations of Prince Faisal."  (Compl. ¶ 34). In support of his tortious interference claims, Plaintiff alleges:

> "[The Airline] and [Investments] were aware of the contractual obligations between Prince Faisal and Alpha and have intentionally tried to strip Prince Faisal of the benefit of his bargain with Alpha by forcing him to redeem his shares for a fraction of their worth.  [The Airline] and [Investments] have interfered intentionally, and Prince Faisal would have sold the shares to Alpha but for the Defendants' interference."

(Compl. ¶¶ 20, 25).  With respect to his conspiracy claim, Plaintiff alleges:

> "Rather than exercise its right of first refusal to Prince Faisal's shares in [Investments], the Airline] has attempted to wrest control of his shares by conspiring with [Investments]  to instigate a forced redemption of Prince Faisal's shares for a fraction of their worth."

(Compl. ¶ 44).  Accordingly, all of Plaintiff's claims arise from the allegation that Investments' redemption of Plaintiff's shares is somehow wrongful.

---

[4]    Incongruously, at the same time he is pursuing this lawsuit, Plaintiff has engaged in a negotiation process to determine the value of his shares -- the proper vehicle to dissent from the redemption of corporate shares under BVI law -- without objection.

The Shareholders' Agreement, however, is clear on its face -- any dispute concerning the agreement must be arbitrated:

> "If any question or difference whatsoever shall arise between the parties touching this Agreement or any clause or thing herein contained or the construction thereof, or as to any matter in any way connected therewith or arising therefrom, then, and in all such cases, the matter in dispute shall be referred to arbitration in London by three arbitrators in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce, Paris and any awards rendered in such arbitration shall be final and binding on the parties, who shall give full effect thereto."

(Shareholders' Agreement ¶ 16).

Notably, the Investments AofA, which provides Investments with the authority to redeem its own shares, likewise contains an arbitration clause, which provides that:

> "Whenever any difference arises between [Investments] on the one hand and any of the members or their executors, administrators or assigns on the other hand, touching on the true intent and construction or the incidence or consequences of these Articles or of the [BVI] Act, touching anything done or executed, omitted or suffered in pursuance of the Act or touching any breach or alleged breach or otherwise relating to the premises or to these Articles, or to any Act or Ordinance affecting [Investments] or to any of the affairs of [Investments] such difference shall be referred to arbitration in London by three arbitrators in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce, Paris, and any award or awards rendered in such arbitration shall be final and binding on the parties who shall give full effect thereto."

(Investments AofA, Art. 141).

## ARGUMENT

## I.

## THE COURT SHOULD COMPEL THE PARTIES TO ARBITRATE PLAINTIFF'S CLAIMS

Plaintiff asserts five causes of action in the Complaint: tortious interference with an existing contract; tortious interference with an economic relationship; breach of contract; breach

of the implied covenant of good faith and fair dealing; and civil conspiracy.[5]  Each of those

causes of action is subject to arbitration under either the Shareholders' Agreement or the

Investments AofA, or both.  Accordingly, the Court should order the parties to conduct

arbitration in London, England, per those arbitration clauses.

The first relevant arbitration clause is set forth in the Shareholders' Agreement, which

provides that:

> "If any question or difference whatsoever shall arise between the parties
> touching this Agreement or any clause or thing herein contained or the
> construction thereof, or as to any matter in any way connected therewith or
> arising therefrom, then, and in all such cases, the matter in dispute shall be
> referred to arbitration in London by three arbitrators in accordance with the
> Rules of Conciliation and Arbitration of the International Chamber of
> Commerce, Paris and any awards rendered in such arbitration shall be final and
> binding on the parties, who shall give full effect thereto."

(Shareholders' Agreement ¶ 16).  The second relevant arbitration clause is set forth in Article 141

of the Investments AofA, which provides that:

> "Whenever any difference arises between [Investments] on the one hand and
> any of the members or their executors, administrators or assigns on the other
> hand, touching on the true intent and construction or the incidence or
> consequences of these Articles or of the [BVI] Act, touching anything done or
> executed, omitted or suffered in pursuance of the Act or touching any breach or
> alleged breach or otherwise relating to the premises or to these Articles, or to
> any Act or Ordinance affecting [Investments] or to any of the affairs of
> [Investments] such difference shall be referred to arbitration in London by three
> arbitrators in accordance with the Rules of Conciliation and Arbitration of the
> International Chamber of Commerce, Paris, and any award or awards rendered
> in such arbitration shall be final and binding on the parties who shall give full
> effect thereto."

---

[5]    Plaintiff also asserts a cause of action for "Injunction," but an injunction is a remedy, not a
separate claim.  Spagnola v. The Chubb Corp., No. 06 Civ. 9960, 2007 WL 927198,  at  *6
(S.D.N.Y. March 27, 2007) ("an injunction is a remedy and not a separate cause of action
sustainable on its own") (emphasis in original).

(Investments AofA, Art. 141).  Because Plaintiff's claims all arise from Defendants' alleged breach of the Shareholders' Agreement, or actions taken pursuant to rights granted under the Investments AofA or pursuant to the BVI Act, these arbitration clauses cover all of the causes of action asserted in the Complaint.

Under the FAA,[6] "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); see, e.g., Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003). This "emphatic federal policy in favor of arbitrable dispute resolution" is particularly relevant in the instant case, as it "applies with special force in the field of international commerce." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 625 n.13 (1985).

Moreover, the arbitration clauses set forth in the Shareholders' Agreement and the Investments AofA are "broad" and therefore subject to an extremely wide interpretation. See McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1988) (observing the distinction between "'broad' clauses that purport to refer all disputes arising out of a contract to arbitration and 'narrow' clauses that limit arbitration to specific types of disputes."). Each of the arbitration clauses contains open-ended, catch-all language that is the distinguishing

---

[6] The interpretation of these arbitration clauses is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et. seq., notwithstanding the law governing the Shareholders Agreement or the Investments AofA generally.  See, e.g., Sea Bowld Marine Group, LDC v. Ocean Fast Pty, Ltd., 432 F. Supp. 2d 1305, 1312 (S.D. Fla. 2006) (concluding that "federal law governs the question of arbitrability regardless of choice-of-law and arbitration clauses referencing foreign law"); accord Mann v. N.A.S.A. Int'l, Inc., No. 99 Civ. 11936, 2000 U.S. Dist. LEXIS 11922, at *12-13 (S.D.N.Y. Aug. 18, 2000).

feature of a broad arbitration clause.  For example, the Investments AofA arbitration clause

covers "any breach or alleged breach or otherwise relating to the premises or to these Articles."

The Shareholders' Agreement arbitration clause covers "any matter in any way connected [with

the Shareholders' Agreement] or arising [from the Shareholders' Agreement]."  It is difficult to

imagine an arbitration clause worded more expansively than those at issue here.

   A "broad" arbitration clause presumptively covers any dispute touching upon the

subject matter of the contract or instrument at issue.  "[T]he existence of a broad agreement to

arbitrate creates a presumption of arbitrability which is only overcome if it may be said with

positive assurance that the arbitration clause is not susceptible of an interpretation that covers the

asserted dispute.  Doubts should be resolved in favor of coverage."  WorldCrisa Corp. v.

Armstrong, 129 F.3d 71, 74 (2d Cir. 1997) (citation omitted); accord Gordon v. N.Y. Times

Employees Fed. Credit Union, No. 01 Civ. 0811, 2001 U.S. Dist. LEXIS 15531, at *4 (S.D.N.Y.

Sept. 26, 2001) (Buchwald, J.) (observing that when interpreting a broad arbitration clause,

"even if [this court] were less certain of our reading of the arbitration clause, we would be

required to resolve any uncertainty in favor of arbitration").

   The scope of a broadly-worded arbitration provision is thus not limited just to claims

arising under the contract itself, but rather "extends to collateral matters" as well, as long as they

"touch matter" within the main agreement to arbitrate.  See JLM Indus. v. Stolt-Nielsen SA, 387

F.3d 163, 172 (2d Cir. 2004) (the coverage of a broad arbitration clause "extends to collateral

matters"); ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 34 (2d Cir.

2002) ("when parties use expansive language in drafting an arbitration clause, presumably they

intend all issues that 'touch matters' within the main agreement to be arbitrated") (citation

omitted); Nat'l Union Fire Ins. Co. v. Champps Entm't, Inc., No. 04 Civ. 6163, 2004 U.S. Dist.

9

LEXIS 25052, at *7 (S.D.N.Y. Dec. 13, 2004) (Buchwald, J.) ("A broad arbitration clause gives rise to a 'presumption of arbitrability' and requires 'arbitration of even a collateral matter . . . if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.'") (citation omitted).

As the Second Circuit has stated:

> "where the arbitration clause at issue is a broad one, it is presumptively applicable to disputes involving matters going beyond the interpret[ation] or enforce[ment of] particular provisions of the contract which contains the arbitration clause."

JLM Indus., 387 F.3d at 172 (brackets in original) (citation omitted).  Thus, a broad arbitration clause will cover disputes that may only be tangentially related to the performance of the contract at issue.

In the case at hand, Plaintiff sues the Airline for breach of the Shareholders' Agreement and for breach of the implied covenant of good faith and fair dealing incorporated in the Shareholders' Agreement.  It is beyond dispute that such claims are subject to arbitration under the Shareholders' Agreement.  See Metzler v. Harris Corp., No. 00 Civ. 5847, 2001 U.S. Dist. LEXIS 1903, at *14 (S.D.N.Y.  Feb. 26, 2001) (where contract containing the arbitration provision addressed "the precise issue" of plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims, such claims were arbitrable); Lurzer GMBH v. American Showcase, 77 F. Supp. 2d 370, 375 (S.D.N.Y. 1997), aff'd 201 F.3d 431 (2d Cir. 1999) (plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims "clearly [fell] within the scope of the broad arbitration clause" where they alleged breach of the very contract containing the arbitration provision).  Accordingly, the Court should compel arbitration of Plaintiff's contract claims on this ground alone.

Furthermore, all of Plaintiff's claims are factually premised upon allegations that Defendants' attempt to redeem Plaintiff's shares of Investments under Article 19 of the Investments AofA is somehow improper.  As Plaintiff alleges:

> "[The Airline] and [Investments] were aware of the contractual obligations between Prince Faisal and Alpha and have intentionally tried to strip Prince Faisal of the benefit of his bargain with Alpha by forcing him to redeem his shares for a fraction of their worth.  [The Airline] and [Investments] have interfered intentionally, and Prince Faisal would have sold the shares to Alpha but for the Defendants' interference."

(Compl. ¶ 20, 25).  Furthermore, Plaintiff alleges:

> "Rather than exercise its right of first refusal to Prince Faisal's shares in [Investments, the Airline] has attempted to wrest control of his shares by conspiring with [Investments] to instigate a forced redemption of Prince Faisal's shares for a fraction of their worth."

(Compl. ¶ 44); see also (Compl. ¶ 14 (a) ("Unless [Investments] and [the Airline] are restrained from redeeming the shares . . . [t]he rights that Prince Faisal has a shareholder . . . will be lost"); ¶ 28 ("[The Airline] has breached the express terms of the Shareholder's Agreement between the parties by instructing [Investments] to force a redemption of Prince Faisal's shares in order to avoid its right of first refusal obligations"); ¶ 36 ("[the Airline] arbitrarily, and in a manner inconsistent with the reasonable expectations of the parties, instigated these redemption proceedings which are clearly contrary to the expressed intent of the parties.")).

In addition, Plaintiff's allegations raise questions regarding the sufficiency of Defendants' performance of its obligations under Sections 176 and 179 of the BVI Act[7] with regard to the redemption of Plaintiff's shares.  (See Compl. ¶ 13 (stating that Plaintiff has not

---

[7]     Copies of sections 176 and 179 of the BVI Act are attached as Exhibits D and E of the Strauber Decl.

waived "his right to contest this redemption as illegal and invalid under both New York and BVI law"); ¶ 14 (d) ("Prince Faisal is entitled to invoke the mechanism contained in section 179(8) of the Act, which would require [Investments] to enter into negotiations with a view to agreeing the fair value of Prince Faisal's shares subject to redemption")).

Insofar as Plaintiff's claims raise issues regarding actions taken under the Investments AofA and/or pursuant to the BVI Act, this lawsuit falls directly under Article 141 of the Investments AofA because it touches upon "[an] incidence or consequences of these Articles or of the Act [or] anything done or executed, omitted or suffered in pursuance of the [BVI] Act or … any breach or alleged breach or otherwise relating to the premises or to these Articles." See e.g., Norcom Elecs. Corp. v. CIM USA Inc., 104 F. Supp. 2d 198, 204-05 (S.D.N.Y. 2000) (tortious interference with business relationships claim was arbitrable where allegedly tortious conduct "relate[d] to" the parties' agreement containing an arbitration clause); Radio Computing Servs. v. Cool Partners, Inc., No. 01 Civ. 5892, 2001 U.S. Dist. LEXIS 9673, at *6 (S.D.N.Y. July 12, 2001) (Buchwald, J.) (plaintiff's breach of a service agreement claim was arbitrable because "[r]esolution of the merits of this claim is difficult without construing the [contract containing the broad arbitration clause]"); Nat'l Union Fire Ins. Co., 2004 U.S. Dist. LEXIS 25052, at *10 (it was "beyond cavail" that a dispute was arbitrable where plaintiff asked this court to "provide remedies that affect National Union's rights with respect to" certain contracts referenced in a broad arbitration clause).  Accordingly, Defendants' motion to compel arbitration of all of Plaintiff's claims should be granted for this reason as well.

**II.**

**EVEN IF THIS COURT CONCLUDES THAT IT SHOULD NOT
COMPEL ARBITRATION, THE COMPLAINT SHOULD BE
DISMISSED ON THE GROUND OF *FORUM NON CONVENIENS*
BECAUSE PLAINTIFF'S CLAIMS HAVE ABSOLUTELY
<u>NO CONNECTION WITH THE STATE OF NEW YORK</u>**

Even if this Court declines to compel the parties to conduct arbitration, the Complaint
should be dismissed for a separate and independent reason -- the Court should decline to exercise
jurisdiction on the ground of *forum non conveniens* in light of the fact that the case has virtually
no connections to the State of New York and it would be inconvenient for the parties to litigate
here.

> "In evaluating a defendant's motion to dismiss for forum non conveniens, a
> district court must: (1) evaluate the level of deference to which plaintiff's choice
> of forum is entitled, (2) determine the availability of an 'adequate alternative
> forum,' and (3) if such forum exists, balance relevant public and private
> interests, and conclude, based on that balance, whether plaintiff's choice of
> forum may stand."

<u>Acosta</u> v. <u>JPMorgan Chase & Co.</u>, No. 06-0995-cv, 2007 U.S. App. LEXIS 5635, at *3-4 (2d
Cir. March 6, 2007).

In the instant case, the Court should decline to exercise jurisdiction and dismiss the
Complaint because: Plaintiff has chosen to bring suit in a forum that has no connection to the
parties or their dispute; there are several more convenient and appropriate fora; and because the
balance of public and private interests overwhelmingly demonstrate that this forum's connection
with, and interest in, this action is tenuous at best.  See e.g., <u>Odyssey Re (London) Ltd</u>. v.
<u>Stirling Cooke Brown Holdings Ltd</u>., 85 F. Supp. 2d 282, 307 (S.D.N.Y. 2000) (Buchwald, J.)
("the foreign jurisdiction is the more convenient forum" where the events and omissions
underlying plaintiff's complaint all took place abroad and "the alleged harm perpetrated falls in a
foreign jurisdiction, and as a consequence foreign law controls the outcome of the case"); <u>Acosta</u>

v. JPMorgan Chase & Co., 05 Civ. 977, 2006 U.S. Dist. LEXIS 3491, at *25, 28 (S.D.N.Y. Jan. 30, 2006) (Buchwald, J.), aff'd, 2007 U.S. App. LEXIS 5635 (affirming dismissal on forum non conveniens grounds where the allegedly tortious conduct "occurred overwhelmingly in Argentina and Uruguay and was directed at Argentine and Uruguayan residents" and "the case [would] require extensive applications of both Uruguayan and Argentine law"); Victoriatea.com, Inc. v. Cott Bev. Can., 239 F. Supp. 2d 377, 384-86 (S.D.N.Y. 2003) (dismissing on forum non conveniens grounds where allegedly tortious acts could be traced back to the parties' contractual rights and the contracts at issue were formed in Canada and involved Canadian parties); Overseas Media, Inc. v. Skvortsov, 441 F. Supp. 2d 610, 618-19 (S.D.N.Y. 2006) (dismissing on forum non conveniens grounds where an "overwhelming proportion of the witnesses and evidence" was located in Russia and plaintiff's claims were premised on its "alleged possession of worldwide rights held pursuant to Russian contracts").

A.    Plaintiff's Choice of Forum is Not Entitled to Deference

As an initial matter, this court must determine what degree of deference, if any, that will be afforded to Plaintiff's choice of forum. Pollux Holding, Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003). Although there is a presumption that a plaintiff suing in its home forum selects that forum because of its convenience, it is well-established that this same presumption is given less deference where a foreign plaintiff brings suit in the United States courts. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 (1981) ("Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."); Acosta, 2006 U.S. Dist. LEXIS 3491, at *15 (where all plaintiffs were foreign nationals, their "choice of forum merits little deference"). Rather, the degree of deference given to a foreign plaintiff's choice of forum depends on whether the

plaintiff or its lawsuit have "bona fide connection[s]" with that forum such that it is reasonable to presume their forum selection was based on considerations of convenience. See Pollux, 329 F.3d at 71 (2d Cir. 2003).

The allegations of wrongdoing in the Complaint -- the alleged breach of the Shareholders' Agreement (entered among Saudi Arabia, Pakistani and BVI residents) and the redemption of Plaintiff's shares in Investments (a BVI corporation) -- have no connection to the United States, let alone New York.  Accordingly, Plaintiff can not establish a "bona fide connection" with the Southern District of New York.  See Acosta, 2007 U.S. App. LEXIS 5635, at *5 (foreign plaintiffs failed to demonstrate a bona fide connection to their chosen forum where "the vast majority of the activities alleged in the complaint were committed by foreign nationals on foreign soil"); Monegasque De Reassurances S.A.M. (monde Re) v. Nak Naftogaz of Ukr., 311 F.3d 488, 499 (2d Cir. 2002) ("little deference need be given to the petitioner's choice of forum" where jurisdiction was "the only link between the parties and the United States"); Kirch v. Liberty Media Corp., No. 04 Civ. 667, 2006 U.S. Dist. LEXIS 82175, at *13 (S.D.N.Y. Nov. 8, 2006) (Buchwald, J.) ("plaintiffs' choice of this forum is not to be afforded great deference, in light of the inherently German nature of this dispute").[8]  Thus, Plaintiff's choice of forum is

---

[8]    Indeed, the fact that Plaintiff has brought suit in the United States despite his non-existent nexus with the parties and dispute in this action gives rise to an inference that forum shopping, rather than considerations of convenience, motivated his forum selection.  See Turedi v. Coca Cola Co., 460 F. Supp. 2d 507, 522 (S.D.N.Y. 2006) (where foreign plaintiffs brought suit against a foreign defendant arising from allegedly tortious conduct that occurred in a foreign country, it gave 'rise to a strong inference that forum-shopping considerations served as a substantial motivation in Plaintiffs' venue choice in this District"); accord Do Rosario Veiga v. World Meteorological Org., No. 07 Civ. 3182, 2007 U.S. Dist. LEXIS 33879, at *10 (S.D.N.Y. May 7, 2007).  "Where there are indicia of forum shopping, the

(Cont'd on following page)

entitled to little or no deference.  See, e.g., Turedi, 460 F. Supp. 2d at 522  ("where the circumstances indicate that the parties and events bear no bona fide connection to the United States, or that in relation to the core operative facts in dispute they at best may have only marginal links to the plaintiff's choice of forum, that choice of venue is not entitled to special deference, in particular where the claimants are all foreign residents").

### B.    There is an Adequate Alternative Forum for This Litigation

For the purposes of a *forum non conveniens* analysis, an "alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." Yung v. Lee, 160 Fed. Appx. 37, 41 (2d Cir. 2005) (citation omitted).  An adequate alternative forum exists for this litigation -- the BVI.

The BVI has modern functional courts that are perfectly adequate to adjudicate this dispute.  Investments, the corporate defendant at the heart of this dispute, is organized under the BVI law and thus subject to jurisdiction there.  The Airline would waive any objections to jurisdiction in BVI.  This is sufficient to establish that an adequate alternative forum is available. See Dowling v. Hyland Therapeutics Div., Travenol Lab., Inc., 767 F. Supp. 57, 58 (S.D.N.Y. 1991) (noting an alternative forum exists because defendants had consented to service and appearance in Ireland); Odyssey Re (London) Ltd., 85 F. Supp. 2d at 305 (England was an available alternative forum for English defendants that were naturally amenable to service therein).

_____

(Cont'd from preceding page)

presumption in favor of the plaintiff's choice of forum may not apply, either at all or with full force."  Henderson v. Metro. Bank & Trust Co., 470 F. Supp. 2d 294, 302 (S.D.N.Y. 2006) (citation omitted).

C.    A Balancing of the Private And Public Interest
      Factors Weighs in Favor of Dismissal

Finally, this Court must balance the private and public interests at stake in this litigation to determine where this suit would be most appropriately adjudicated.  Yung, 160 Fed. Appx. at 41.  In this case, all of the private and public interests favor the dismissal of this case on the ground of *forum non conveniens*.

1.    Private Interest Factors

The factors relevant to assessing the private interests of the litigants include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses . . . and all other practical problems that make trial of a case easy, expeditious, and inexpensive."  Piper, 454 U.S. at 241 n.6.  Even a cursory review of this matter reveals that a trial in this District could hardly be considered "easy, expeditious, and inexpensive."  In fact, given that the parties and all relevant witnesses are foreign, the contracts at issue were negotiated and executed in foreign countries, and the allegedly tortious conduct took place outside of the United States, there is nothing "practical" about this Court's retaining jurisdiction over this case.

Any potential witnesses and documents in this case will be located in Saudi Arabia, Pakistan and BVI.  (See Farookee Decl. ¶3; Rezvi Decl. ¶3).  None of the witnesses or documents is located in New York.  These facts strongly support dismissal.  See, e.g., Overseas Media, 441 F. Supp. 2d at 618 (where the parties to the underlying contracts at issue and individuals with knowledge of the allegedly tortious activity were foreign, the inconveniences associated with litigating in this District weighed in favor of dismissal); Acosta, 2006 U.S. Dist. LEXIS 3491, at *26 (where the "overwhelming amount of documentary proof [concerning plaintiff's allegations] would be located in Argentina and Uruguay," the private interest factors

militated in favor of dismissal); <u>Trigano</u> v. <u>Bain & Co.</u>, No. 98-7475, 1999 U.S. App. LEXIS 14626, at *4 (2d Cir. June 29, 1999) (where injury and tortious conduct occurred in other fora, and the witnesses and evidence were spread among multiple fora, having "this dispute litigated in New York would therefore increase the cost for witnesses to attend trial and the difficulty of accessing the evidence"). Any non-party witnesses will not be subject to this Court's subpoena power, another fact supporting dismissal. <u>See</u> <u>Strategic Value Master Fund, Ltd.</u> v. <u>Cargill Fin. Servs., Corp.</u>, 421 F. Supp. 2d 741, 768 (S.D.N.Y. 2006) ("The fact that defendant's nonparty witnesses are not subject to the Court's compulsory process weighs heavily in favor of dismissal"); <u>Capital Currency Exch.</u> v. <u>Nat'l Westminster Bank PLC</u>, 155 F.3d 603, 611 (2d Cir. 1998) (foreign forum more appropriate where key witnesses were not subject to compulsory process in the United States); <u>Murray</u> v. <u>BBC</u>, 81 F.3d 287, 295 (2d Cir. 1996) (acknowledging the "possibility that appellees might not be able to compel third parties located in England to produce documents tipped [the private interest factors] in favor of [dismissal]").

      2.    <u>Public Interest Factors</u>

A balancing of the public interests associated with this litigation is equally one-sided. The facts that none of parties, relevant witnesses or evidence is located in this forum and that the alleged breaches of contracts and tortious activity occurred elsewhere demonstrates this case's utter lack of connection with this forum. In light thereof, the courts of the United States have no public interest in this matter at all.

The Supreme Court has acknowledged that public interest factors bearing on the *forum non conveniens* analysis include:

> "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home . . . the avoidance of unnecessary problems in conflict of laws, or the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."

Piper, 454 U.S. at 241 n. 6 (citation omitted).  In the instant case, a review of these factors

reveals that there are multiple fora, most notably the BVI, with a far greater interest in this

litigation than the United States.

    As an initial matter, the United States has little interest in cases like this, in which the

allegedly tortious conduct and Plaintiff's injury occurred abroad.  See Odyssey Re (London) Ltd.,

85 F. Supp. 2d at 306 ("'New York has no interest in this case given that none of the parties is

domiciled in New York, no business related to this case has been shown to have been transacted

in New York, and none of the events giving rise to these causes of action occurred in New

York.'") (quoting PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc., No. 96 Civ.

3669, 1997 WL 31194, at *9  (S.D.N.Y. Jan. 28, 1997)); Kilvert v. Tambrands Inc., 906 F. Supp.

790, 795 (S.D.N.Y. 1995) ("England's public interest in the resolution of this litigation plainly

outweighs that of the United States" where the defendant's allegedly tortious conduct and

plaintiffs' injuries occurred in England, and the  "only tie [to] this district [] is that New York is

the corporate headquarters of the company that tested and designed the [allegedly defective

product], at its plant in Massachusetts"); In re Rezulin Prods. Liab. Litig., 214 F. Supp. 2d 396,

400 (S.D.N.Y. 2002) ("The public interest factors favor litigation in Canada, essentially because

Canada has a predominant interest in seeing that its residents are compensated for injury[.]").

    Nor does the United States have any interest in litigation arising from a contract, the

Shareholders' Agreement, executed and performed outside of its borders.  See, e.g., Pollux, 329

F.3d at 76 (concluding England had a greater local interest than the United States because, inter

alia, plaintiff's "breach of contract and breach of fiduciary duty [arose] out of contracts entered

into in London"); Trigano, 1999 U.S. App. LEXIS 14626, at *3-4 (litigation was a French

dispute, which should be adjudicated locally, in part because the contract at issue was executed

in France); <u>Overseas Media</u>, 441 F. Supp. 2d at 619 (Russia had a greater interest than the United States because the "contracts regarding the disputed rights at issue were negotiated in Russia by Russian parties"); <u>see</u> <u>Otor, S.A.</u> v. <u>Credit Lyonnais, S.A.</u>, No. 04 Civ. 6978, 2006 U.S. Dist. LEXIS 64885, at *19 (S.D.N.Y. Sept. 11, 2006) ("Any localized interest in having [certain disputes arising from a Shareholders' Agreement] resolved 'at home' rests squarely with France -- plaintiffs are all French entities, all negotiations leading up to the Otor Transaction took place solely in France, and the Shareholders' Agreement was executed and implemented in France.").

In contrast, BVI has a strong interest in adjudicating this matter. As discussed above, the principal issue in this case will be the propriety of Investments' redemption of Plaintiff's shares pursuant to the Investments AofA and Sections 176 and 179 of the BVI Act. BVI obviously has an interest in the actions taken by corporations organized under its laws, and taken pursuant to its statutes. Indeed, the court that adjudicates this dispute will likely be the first to interpret the scope and application of Sections 176 and 179 of the BVI Act insofar as research does not reveal any decisions interpreting these Sections. BVI plainly has a strong interest in having its courts interpret its own laws, particularly when it is a novel question of first impression. <u>See</u> <u>Pollux</u>, 329 F.3d at 76 (concluding that public interests weighed in favor of dismissal based in part on its observation that because "most of the relevant conduct occurred in England, English law would apply to the preponderance of plaintiffs' tort claims . . . [and because the contracts at issue] contained choice of law provisions electing English law, English law would likely apply to all of the plaintiffs' contractual claims as well"); <u>Kirch</u>, 2006 U.S. Dist. LEXIS 82175, at *30 ("the German forum is preferable given its greater familiarity with principles of German conflict of laws and res judicata under German law"); <u>Diatronics, Inc</u>. v. <u>Elbit Computers, Ltd</u>., 649 F. Supp. 122, 129-130 (S.D.N.Y. 1986) (concluding that should the

contractual choice of law provision prove valid,  the necessary "application of foreign law weighs in favor of dismissing the action"); <u>see also</u> <u>Brockman</u> v. <u>Sun Valley Resorts</u>, 923 F. Supp. 1176, 1183 (D. Minn. 1996) (transferring case to Idaho because an "Idaho court should lay down the novel standard by which Idaho residents may be judged in the future"); <u>Clisham Mgmt., Inc</u>. v. <u>Am. Steel Bldg. Co</u>., 792 F. Supp. 150, 158 (D. Conn. 1992) (transferring case to Texas in part because "of the novel issues of Texas law" involved).

Moreover, because Plaintiff's tort claims arise from allegations of conduct in multiple countries, all of which are outside of the United States, an assessment of such claims would likely require this court to engage in a difficult conflict of law analysis.  This too militates in favor of dismissal.  <u>See</u> <u>Damigos</u> v. <u>Flanders Compania Naviera, S.A.</u>, 716 F. Supp. 104, 108 (S.D.N.Y. 1989) (the "necessity of conducting conflict of laws analyses . . . points toward dismissal).

This court should not countenance the unnecessary administrative burden on the Southern District of New York from a case with which it has no cognizable connection.  The Supreme Court has acknowledged that administrative "difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin." <u>Gulf Oil Corp</u>. v. <u>Gilbert</u>, 330 U.S. 501, 508 (1947).  This district is undoubtedly one such "congested center," as one court has observed that this is "'one of the busiest districts in the country.'" <u>Doe</u> v. <u>Hyland Therapeutics Div</u>., 807 F. Supp. 1117, 1128 (S.D.N.Y. 1992) (citation omitted); <u>see also</u> <u>In re Union Carbide Corp. Gas Plant Disaster at Bhopal</u>, 634 F. Supp. 842, 862 (S.D.N.Y. 1986), <u>aff'd as modified</u>, 809 F.2d 195 (2d Cir. 1987) (dismissing action in part because it was persuaded by the New York Court of Appeals' admonition that the "'taxpayers of this State should not be compelled to assume the heavy financial burden attributable to the cost of administering the

litigation contemplated when their interest in the suit and the connection of its subject matter . . .

is so ephemeral") (quoting <u>Islamic Republic of Iran</u> v. <u>Pahlavi</u>, 62 N.Y.2d 474, 478, 467 N.E.2d

245, 250, 478 N.Y.S.2d 597, 602 (1984)).  Accordingly, this factor favors dismissal as well.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should compel the parties to arbitrate Plaintiff's

claims in London, England.  Alternatively, this Court should dismiss this matter in its entirety on

the ground of *forum non conveniens*.

June 28, 2007

                              CHADBOURNE & PARKE LLP


                              By  /s Donald I Strauber_____
                                     Donald I Strauber (DS-9256)
                                     A Member of the Firm
                                Attorneys for Defendants PIA Investments
                                   Limited and Pakistan International
                                   Airlines Corporation
                                30 Rockefeller Plaza
                                New York, New York  10112
                                (212) 408-5100


Of Counsel:

Phoebe A. Wilkinson (PW-3143)
Matthew I. Kliegman (MK-4962)