SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

H.R.H PRINCE FAISAL BIN KHALID BIN
ABDULAZIZ AL SAUD,

         Plaintiff,

    v.

PIA INVESTMENTS LIMITED, PAKISTAN
INTERNATIONAL AIRLINES CORPORATION,

         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

07 Civ. 5603 (NRB)(HBP)

**AMENDED COMPLAINT**

Plaintiff, His Royal Highness Prince Faisal Bin Khalid Bin Abdulaziz Al Saud ("Prince Faisal"), by its undersigned counsel, for his amended complaint against Defendants PIA Investments Limited (the "Company") and Pakistan International Airlines Corporation ("PIAC"), alleges as follows:

## THE NATURE OF THE ACTION

1.     This is an action for tortious interference with an existing contract; tortious interference with an economic relationship; breach of contract; breach of the implied covenant of good faith and fair dealing; and civil conspiracy. Prince Faisal also seeks emergency relief ordering Defendants to engage in the appraisal process of, and pay for, all of his shares in the Company, which process has been formally initiated by the Company. Earlier this year, and prior to such initiation, Prince Faisal gave notice to the Company and PIAC that he had entered into a valid agreement with a third party to sell 90% these shares for $8.6 million and offered the Company the right of first refusal in regards to the purchase of this 90% of the shares, as required under a long-standing contract between PIAC and him. Rather than exercise its right to acquire the shares and pay their fair value in this manner, however, the Company initiated a

forced redemption of Prince Faisal's shares for a price for 100% of Prince Faisal's shares of $480,000, which is a very small fraction of the $8.6 million price for only 90% of his shares, thus, among other things, preventing the sale to the third party. As allowed under BVI law, Prince Faisal sought to implement a process by which the proper value of his shares would be determined by having adjusted the mechanism he originally proposed to accommodate comments by the Company's counsel and sending his final version of his mechanism to the Defendants' counsel; the Company had proposed its own process, which will not efficiently and with certainty result in a determination of the fair value, and has not responded to Prince Faisal's proposed mechanism. Defendants have instead sought to impede the process through repeated delay tactics and obfuscation, as they are aware that the appraisal will force them to pay a fair price for 100% of the shares, likely millions of dollars in excess of their proposed redemption price, and also will obligate the Defendants to be responsible for millions of dollars of New York State and New York City real estate transfer taxes. The Defendants' stonewalling of the appraisal process cannot be countenanced any longer as it constitutes an unjust freezing of Prince Faisal's shares in violation of the law. The Company, having invoked the appraisal process, must engage in it fully, pay the price for 100% of his shares and bear the consequences of the resulting determination. The mechanism proposed by Plaintiff will achieve the legally mandated result, and the Defendants should be required to follow it.

## THE PARTIES

2. Plaintiff Prince Faisal is a citizen of Saudi Arabia.

3. Defendant Company is an alien corporation. The Company has owned and operated, though subsidiaries, several hotels, including the Roosevelt Hotel in Manhattan and the Hotel Scribe in Paris, France, both of which it continues to own.

4. Defendant PIAC is an alien corporation. PIAC is the national airlines of Pakistan and owns 99% of the Company's common stock. It fully exercises dominion and control over the Company.

## BACKGROUND

5. On June 30, 1979, Prince Faisal and PIAC entered into a Shareholders' agreement to regulate their affairs with respect of the Company ("the Shareholders' Agreement").

6. Prince Faisal owns 8,000 shares of the Company, representing 1% of the issued share capital of the Company. PIAC is the controlling shareholder of the Company and owns the balance of the shares.

7. Under section 13 of the Shareholders' Agreement, Prince Faisal is authorized to sell his shares in the Company so long as he first gives PIAC written notice of his intention to do so. PIAC then has the right of first refusal to acquire the shares at a price and on terms no less favorable than those which Prince Faisal can otherwise obtain.

8. On or about March 9, 2007, Prince Faisal gave notice to PIAC that he intended to sell 7200 of his shares in the Company to Alpha Capital MC Limited ("Alpha") for the amount of $8,600,000. This notice satisfied section 13 of the Shareholders' Agreement discussed above.

9. PIAC had sixty days after receipt of the offer in which to exercise its right of refusal. PIAC never exercised its right, and the sixty days has expired.

10. On April 24, 2007, before PIAC's right of first refusal expired, PIAC caused the Company to send to Prince Faisal a Notice of Compulsory Redemption of Shares in the Company ("the Company Notice"). The Company Notice was purported to be in compliance with and to have been served pursuant to section 176 of the British Virgin Islands Business Companies Act, 2004 (as amended) ("the Act").

11. The Company Notice stated that the Company intended to redeem Prince Faisal's shares on May 2, 2007 for the paltry sum of $480,000 (equivalent to roughly $60 per share) – a sum over <u>$8 million less</u> than the amount offered by Alpha to Prince Faisal for 100% of his shares (and at a pro rata basis, over $9 million less), which amount the Company has said was the result of an appraisal it had arranged, though the Company has refused, despite repeated requests, to share this appraisal with Prince Faisal. .

12. Under Section 179 of the BVI Business Companies Act, a dissenting shareholder has the right to an appraisal to fix the fair value of the shares owned by the dissenting member.

13. Without waiving his right to contest this redemption as illegal and invalid under both New York and BVI law, Prince Faisal, out of the abundance of caution, served a notice of dissent concerning the attempt to redeem his shares on April 27, 2007. The redemption price stated is far less than what the shares are worth, as evidenced by the gross disparity between the Company's stated offer and the outstanding purchase offer by Alpha.

14. In July 2007, after the commencement of this lawsuit, Defendants secretly implemented, without notice to or approval by Prince Faisal, substantive amendments to the Company's articles of association that attempted to strip Prince Faisal of his rights. These amendments occurred without notice to Prince Faisal, a shareholder. These amendments included (1) the deletion of a provision that made the articles subject to the provisions of the Shareholders' Agreement; and (2) the removal of the limitation barring the Company from redeeming any shares "without the consent of the members whose shares are to be purchased, redeemed or otherwise acquired."

15. On August 17, 2007, Prince Faisal noticed the Company that it had appointed the firm of CB Richard Ellis Inc. as its appraiser. The Company noticed Prince Faisal of its appraiser, Maggie Mullen.

16. The parties agreed that the appraisal would be accomplished pursuant to an appraisal protocol ("Protocol") to be determined by the parties. When a Protocol is agreed upon, Defendants will forward valuation documents to the two appraisers. The two appraisers will, in turn, make contact and reach agreement on their selection of a third appraiser.

17. On September 5, 2007, the Company sent Prince Faisal a draft Protocol that made clear its intention to drag this process out indefinitely without resolution. The proposal provided that the decision of the 3 appraisers would be reached by majority rule. The statute does not so provide. More importantly, however, such a proposal assumes that two of the appraisers will have an identical opinion, a highly unlikely event, and provides no method for resolving the dispute in the far more likely event that each of the three appraisers reaches a different value. This proposal was a clear effort by Defendants to bog the redemption down and deny plaintiff any compensation.

18. Prince Faisal has made several attempts to advance the appraisal process by sending, in response to the Company's initial proposal and in response to comments from the Company's counsel on Prince Faisal's draft Protocol, explanatory comments and two further drafts of a proposed Protocol to Defendants for review. The first draft Protocol was sent on September 20, 2007, and a second was sent on November 13, 2007.

19. Defendants responded to Prince Faisal's second Protocol on November 19, 2007; however, rather than move forward the appraisal process, their response is conceptual in nature, generally without specific language (and thus requiring further drafting for Prince Faisal and his

5

counsel to have a legitimate opportunity to understand the fullness of Defendants' intentions) and includes a number of demands that are intended only to invite additional delay. For example, Defendants have suggested, without support under the relevant BVI law, that prior to a third appraiser being appointed, the parties must create and agree to an elaborate methodology by which the appraisers will determine a fair value figure. Only once such a methodology is finalized – a process that could take months, or may never be concluded – do Defendants propose a third appraiser be appointed. Defendants then demand, as a means to further delay the process, that the three appraisers work jointly to come to a final decision. In contrast, Prince Faisal proposes that each party-designated appraiser be allowed to begin work immediately on the valuation, appointing a third appraiser to make the final decision once the two have reached their separate fair value figures and failed to agree on a fair value. Moreover, Defendants have included demands that the parties be bound by a "majority" decision of the arbitrators without addressing how the arbitrators parties will proceed in the absence of such a majority.

20.     Instead, in an attempt to avoid paying the fair value price for Prince Faisal's shares, Defendants have stymied the appraisal proceedings through their non-responsive inaction – in effect, freezing Prince Faisal's shares for an indefinite time.

21.     Unless the Defendants proceed with the appraisal proceedings and redeem Prince Faisal's shares in the Company for their fair value, Defendants' inaction will lead to irreparable damage to Prince Faisal by making it impossible for him to receive a fair price for his shares, or otherwise have the benefits of ownership. Defendants' refusal to allow Prince Faisal to proceed with an appraisal pursuant to Prince Faisal's most recent draft Protocol will inevitably result in:

    a.     Prince Faisal losing his rights as shareholder (including without limitation his rights under Section 13 of the Shareholders' Agreement);

6

b. The opportunity costs of millions of dollars owed to Prince Faisal through Defendants' inaction will be lost;

c. Render meaningless section 179(8) of the Act, which requires the Company to enter into negotiations with a view to agreeing the fair value of Prince Faisal's shares subject to redemption. Prince Faisal sought to negotiate in good faith and proposed a price of $9,500,000 for all but one of his remaining shares, plus some consideration for the tax benefits that will accrue to Defendants if the Company does not acquire all of Prince Faisal's shares. Defendants, despite being required under BVI law to make a written offer for the shares at fair value, did not respond to Prince Faisal's offer; and

d. Preventing the parties from proceeding in a fair, balanced manner that will be most efficient for the appraisal process.

22. No prejudice will be suffered by the Company or PIAC if this Court compels them to appraise Prince Faisal's shares as required by law and Prince Faisal's most recent draft Protocol (attached hereto as Exhibit 1).

### FIRST CLAIM FOR RELIEF
### Tortious Interference with Contractual Relations
### Against All Defendants

23. Plaintiff Prince Faisal repeats and re-alleges prior paragraphs 1-22 of this Complaint as though set forth in full herein.

24. Plaintiff Prince Faisal and Alpha entered into a valid purchase agreement under which Alpha would pay $8,600,000 for 7200 shares of the Company held by Prince Faisal.

25. PIAC was given notice and had knowledge of the purchase agreement and its terms between Prince Faisal and Alpha as well as the terms of the Shareholders' Agreement.

26. Rather than lawfully exercise its rights of first refusal under the Shareholders' Agreement, PIAC instead opted to initiate a forced redemption of Prince Faisal's shares under BVI law at a grossly deficient price in order to gain control of the shares without paying either the contractual and/or statutorily required fair value.

27. Despite choosing the redemption course of action, Defendants have refused to proceed with the appraisal proceedings in good faith. Their inaction has prevented Prince Faisal from either receiving fair value for his shares through redemption or through his contract with Alpha.

28. PIAC and the Company were aware of the contractual obligations between Prince Faisal and Alpha and have chosen to prevent Prince Faisal from gaining the benefit of his bargain with Alpha by attempting to exercise their forced redemption right but not proceeding with it to conclusion. However, Defendants' failure to proceed with the appraisal process has stymied Prince Faisal's efforts to gain fair value for his shares. PIAC and the Company have interfered intentionally, and Prince Faisal could have sold the shares to Alpha but for the Defendants' interference, or PIAC would have bought them.

29. Plaintiff Prince Faisal has been damaged and will continue to be damaged by Defendants' conduct.

### SECOND CLAIM FOR RELIEF
### Tortious Interference with an Economic Relationship
### Against All Defendants

30. Plaintiff Prince Faisal repeats and re-alleges prior paragraphs 1-29 of this Complaint as though set forth in full herein.

31. Plaintiff Prince Faisal and Alpha entered into an economic relationship with Alpha wherein Alpha would purchase 7200 of Prince Faisal's shares of the Company, subject only to PIAC's exercise of its right of first refusal, for the purchase price of $8,600,000.

32. PIAC was given notice and had knowledge of the purchase agreement between Prince Faisal and Alpha.

33. PIAC instead opted to initiate a forced redemption of Prince Faisal's shares under BVI law at a grossly deficient price in order to gain control of the shares without paying either the contractual and/or statutorily required fair value.

34. Despite choosing the redemption course of action, Defendants have refused to proceed with the appraisal proceedings in good faith. Their inaction has prevented Prince Faisal from either receiving fair value for his shares through redemption or through his contract with Alpha. PIAC and the Company have interfered intentionally, and Prince Faisal could have sold the shares to Alpha but for the Defendants' interference, or PIAC would have bought them.

35. Plaintiff Prince Faisal has been damaged and will continue to be damaged by Defendants' conduct.

### THIRD CLAIM FOR RELIEF
### Breach of Contract Against PIAC

36. Plaintiff Prince Faisal repeats and re-alleges prior paragraphs 1-35 of this Complaint as though set forth in full herein.

37. PIAC has breached the express terms of the Shareholders' Agreement between the parties by instructing the Company to force a redemption of Prince Faisal's shares in order to avoid its right of first refusal obligations.

38. Plaintiff Prince Faisal has fulfilled his obligations under the Shareholders' Agreement by fully complying with its right of first refusal provision and sending notice of his agreement with Alpha to PIAC.

39. Plaintiff Prince Faisal has been damaged and will continue to be damaged by Defendant PIAC's conduct.

### FOURTH CLAIM FOR RELIEF
### Breach of the Implied Duty of Good Faith and Fair Dealing
### Against PIAC

40. Plaintiff Prince Faisal repeats and re-alleges prior paragraphs 1-39 of this Complaint as though set forth in full herein.

41. PIAC bears an implied duty of good faith and fair dealing in connection with, and in the performance of, the Shareholders' Agreement.

42. PIAC has a duty implied as a matter of law to do nothing destructive of Prince Faisal's right to enjoy the fruits of the Shareholders' Agreement and to do everything that the Shareholders' Agreement presupposes will be necessary to accomplish their purposes.

43. PIAC has wielded its discretionary powers under the Shareholders' Agreement in a manner which threatens to defeat the reasonable expectations of Prince Faisal.

44. The parties and the clear terms of the Shareholders' Agreement granted Prince Faisal the authority to sell his shares in the Company to a third party after the expiration of PIAC's right of first refusal period had expired. Because it did not want to pay Prince Faisal the true worth of his shares in the Company as Alpha had contracted to pay ($8,600,000), PIAC instead initiated the forced redemption to gain control of Prince Faisal's shares for a grossly deficient price. PIAC has refused to proceed with the appraisal process to determine the shares'

fair value under the forced redemption proceeding, preventing Prince Faisal from contracting with a third party or obtaining a fair price for his shares as required under BVI law.

45. By virtue of its dominion and control of the Company, PIAC arbitrarily, and in a manner inconsistent with the parties' reasonable expectations, instigated these redemption proceedings without intending to progress with the appraisal process in good faith. PIAC's actions are clearly contrary to the parties' expressed intent. PIAC did so willfully and in a malicious attempt to evade its legal obligations under the Shareholders' Agreement. Accordingly, PIAC has breached its implied covenant of good faith and fair dealing in fulfilling the purposes of the Shareholders' Agreement.

46. As a result, Prince Faisal has been unable to proceed with his right under Section 13 of the Shareholders' Agreement to sell his shares to a third party, or to sell to PIAC through an exercise of its right of first refusal. He now is unable to proceed with his right to an appraisal of his shares' fair value under BVI law. Prince Faisal has been damaged as a result.

### FIFTH CLAIM FOR RELIEF
### Compel Appraisal Proceedings

47. Prince Faisal repeats and re-alleges paragraphs 1 through 46 above, as if set forth here in full.

48. Rather than pay the fair price for Prince Faisal's shares by exercising its right of first refusal, PIAC chose instead to initiate a forced redemption of Prince Faisal's shares under BVI law in an attempt to gain control of the shares for a greatly reduced price

49. Despite choosing the redemption course of action, however, Defendants have refused to proceed with the appraisal proceedings in good faith. Their inaction has prevented Prince Faisal from either receiving fair value for his shares through redemption or through his contract with Alpha.

50. Plaintiff requests an order compelling Defendants to approve a Protocol for the appraisal methodology and allow the appraisal to proceed in good faith. If Defendants refuse to proceed in an appraisal process in good faith, they must be ordered to allow Plaintiff to go forward with his contractual arrangement with Alpha.

### SIXTH CLAIM FOR RELIEF
### Civil Conspiracy Against All Defendants

51. Prince Faisal repeats and re-alleges paragraphs 1 through 50 above, as if set forth here in full.

52. As alleged above, Defendants have tortiously interfered with Prince Faisal's contractual relations and economic relationship.

53. Rather than exercise its right of first refusal to Prince Faisal's shares in the Company, PIAC has attempted to pay well below market value for Prince Faisal's shares by first conspiring with the Company to instigate a forced redemption of the shares and then freezing them by impeding the appraisal of their fair value through delay tactics and inaction.

54. The Company has indeed instigated a forced redemption of Prince Faisal's shares and refused to agree to an appraisal Protocol in furtherance of Defendants' plan to deny Prince Faisal his shares' fair value through the appraisal process

55. As a result Prince Faisal has been damaged and will continue to be damaged by Defendants' conduct.

### DEMAND FOR RELIEF

WHEREFORE, plaintiff respectfully demands judgment against Defendants as follows:

(a) ordering Defendants, their agents, servants, employees, officers, attorneys, and all other persons in active concert or participation with them, to immediately agree to Prince Faisal's

most recent Protocol for a fair value appraisal process for the determination of the fair value of Prince Faisal's shares of the Company, as required by law, and abide by such Protocol;

      (b)     awarding money damages according to the proof at trial;

      (c)     awarding punitive or exemplary damages to the extent permitted by law;

      (d)     awarding attorneys' fees, costs, and disbursements in prosecuting this action to the extent permitted by law; and

      (e)     awarding such other and further relief as this Court deems just and proper.

Dated: New York, New York
       November 26, 2007

                                 GIBSON, DUNN & CRUTCHER LLP

                                 By: _____
                                     Mitchell A. Karlan (MK-4413)

                                   200 Park Avenue,
                                   47th Floor
                                   New York, New York 10166-0193
                                   Telephone: (212) 351-4000
                                   Facsimile: (212) 351-4035

                                   *Attorneys for Plaintiff*