# EXHIBIT A

**From:** Stephen Moverley Smith QC [mailto:stephen.moverley.smith@xxiv.co.uk]
**Sent:** Monday, November 19, 2007 1:11 PM
**To:** Levy, Andrew H.
**Cc:** piail@cyber.net.pk
**Subject:** PIAIL

WITHOUT PREJUDICE<br>SUBJECT TO CONTRACT

Andy -

Whilst we consider the deadline set by Eric to be unreasonable, bearing in mind the extensive alterations you have made to the earlier draft, in the interests of moving the process along we have nonetheless managed to obtain instructions on your revised draft, as follows:

### Section 1

"HRH Appraiser" in circumstances where a negotiation process is envisaged between individuals only one person should be the person nominated to act individually as the HRH appraiser - we did not understand this to be an issue

"Fair Value"    we believe that it is important that both appraisers start from the same point - the Protocol should define "fair value" so that there is no dispute later as to what is meant

We should also provide that "days" means throughout business days i.e. no weekends or statutory holidays in US, BVI or UK

### Section 2(b)

There is no reason why, if HRH's or PIAIL's appraiser needs to be replaced, the other party should have any say in who his replacement might be, whether by reference to qualifications or otherwise

This provision should perhaps be more widely drawn to cover eventualities beyond death or incapacity which might prevent an appraiser from being able to continue to act

### Section 3(a)

We have already made our position entirely clear in relation to the provision of information:

(a)    information should only be provided to the appraisers who should keep it strictly confidential to themselves alone;

(b)    the appraisers alone should jointly decide what information they need

(b)    both parties should be under an equal obligation to provide it

Your paragraph does not take any of these points into account

### Section 3(b) and (c)

As mentioned above, both HRH and PIAIL should be under identical obligations. It is wholly inappropriate to dictate in advance of the appraisal process commencing what information/documentation should be provided.

**Section 4**

We think that the starting point for the Protocol should be the determination of a sensible mechanism to establish what methodology should be adopted. Once the methodology is clear, then, if the appraisers are acting properly and professionally, any discrepancy between their figures is likely to be limited.

An exchange of reports on methodology prior to the appointment of the third appraiser is appropriate, provided there is a default mechanism if no agreement is reached. As the methodology is in essence dictating to the appraisers how to carry out the appraisal we think the BVI court would, absent agreement, be the appropriate arbiter on this issue.

We have not departed from our view that the legislation dictates that the three appraisers should thereafter act together in carrying out the appraisal process, being bound by a majority decision. This was what we provided in our draft Protocol (see §§4, 8, 10, 11, 17), which should be adopted in relation to this aspect. The fears expressed by Mr. Levy about extreme figures being put forward evaporate if the methodology has been previously established and the appraisers are acting properly and professionally.

If the reports to be exchanged are limited to methodology, then:

- 4(a) should refer to *"his/her report"*
- 4(b) has no application
- we think the time period in 4(c) is reasonable
- 4(d) may be a little short (14 days later)
- 4(e) may be a little too drawn out
- 4(f) needs to contain the default reference to the BVI Court and a timetable for doing that
- As discussed, 4(g) needs to be less draconian: we would suggest that if no report is served, then, say, a 7 day notice can be given by the non-receiving party. The failure to comply with that notice leads to exclusion.

**Section 5**

The appointment of the third appraiser should follow the determination of, or agreement as to, the methodology to be adopted.

The appointment of an RICS member is wholly inappropriate. This is a valuation of a minority shareholding in an offshore holding company NOT a valuation of real estate. It is for that reason that we referred to the President of the Institute of Chartered Accountants - it is the members of that body who specialize in valuing shares.

Provided that it refers to the ICA, the timetable for referral is acceptable.

Although it was suggested in your original e-mail response that the question of appropriate qualifications could be resolved, no attempt has been made to vary those requirements in any substantive way. The crucial qualification is extensive experience in valuing minority shareholdings in limited holding companies. We agree that it would be helpful if his experience extended to valuing such shareholdings where the companies in question have owned hotels, but it seems to us wholly restrictive to require him to have had ten whole years of experience valuing such companies.

We need to have some provision to ensure that the terms upon which the third appraiser is engaged are reasonable - perhaps by reference to an upper limit for chargeout time – and possibly also a mechanism to resolve any dispute which arises in relation to them

In relation to 5(b)(ii), if "PIAC" is to include the Government of Pakistan or any instrumentality or agency thereof, then "HRH" should include the Government of Saudi Arabia, Riyadh Minhal Hotel Company Limited, Hajaj & Associates or any instrumentality or agency or any of them.

**Section 6**

As you will appreciate from what we have said above, we do not consider that the Third Appraiser should be acting as a judge: once the appraisal methodology has been established, the three appraisers should work together.

We think that the process that should be adopted is that of acting by a majority: it is wholly inappropriate, and contrary to the express wording of the legislation, for the third appraiser to sit in judgment on the reports of the other two.

**Section 7(c)**

For this provision to be fair, the nominated person at CBRE must similarly identify, with the same particulars, every person that has helped him

**Section 7(d)**

Despite what we thought had been agreed, the last sentence of this paragraph remains. If an objection is sufficient to render information unusable, this in all practical senses gives a right of veto. This is not acceptable, as we have previously made very clear.

**Section 9(a)**

Subject to the fact that documentation and information is only to be supplied to the appraisers, this is acceptable.

**Section 9(b)**

There is no reason to limit the documentation the Court can see - for instance, if we were to discover a hidden connection between the Third Appraiser and HRH we would want to be able to put that material before the Court. The power of the Court to require the production of material is limited by court rules and in any event the Court needs to have been previously provided with material before it can make any such order. In short, what you have suggested is unworkable.

**Section 10(b)**

The reference should presumably be to the PIAIL Appraiser, not PIAIL itself.

**Section 12(b)**

If the appraisers are unclear about any particular aspect of the Protocol and HRH and PIAIL express differing views about it what is then to happen? If the appraisers are not to make applications to Court themselves, then we should have some sort of certification process whereby in the above scenario the appraisers can certify that a question needs to be determined and then either HRH or PIAIL can apply to Court to resolve it.

**Section 13**

We are wholly opposed to the Courts of New York having any jurisdiction. This was never suggested at the meeting and is nonsensical bearing in mind we are concerned with the operation of provisions of a BVI statute and the valuation of a minority shareholding in a BVI company. You had of course in your earlier draft previously agreed that the BVI Courts should have exclusive jurisdiction.

We consider that the Protocol should be signed up to by the appraisers as well as the parties, as provided for in our draft.

You will see from the above that we differ on some fairly fundamental issues.

I look forward to hearing from you within the next seven days with your thoughts as to whether this process has any further life in it.

As things currently stand it appears to us likely that that the differences in our approaches are unbridgeable and that accordingly directions will need to be sought from the Court (in the BVI).

Regards,

Stephen


*Stephen Moverley Smith QC*

*PRIVACY & CONFIDENTIALITY NOTICE*

*This message is confidential and intended solely for the person to whom it is addressed. It may contain privileged and confidential information. If you are not the intended recipient you must not read, copy, distribute, discuss or take any action in reliance on it. If you have received this message in error, please notify me or my clerk as soon as possible.*

*You should carry out your own virus check before opening any attachment. No liability is accepted for any loss or damage caused by any software viruses or interception/interruption of this mail.*

*Twenty Four Old Buildings, Lincoln's Inn, London WC2A 3UP*

*Tel: 020 7404 0946 Fax: 020 7405 1360*